OPINION
{¶ 1} Michael Dalton is appealing the judgment of the Greene County Common Pleas Court, which found him guilty of two counts of aggravated possession of drugs and one count of illegal assembly or possession of chemicals for the manufacture of drugs.
 {¶ 2} The charges arose from events that occurred on March 23, 2003. On that date, Dalton was staying with a friend named Jeremy Lawrence, who rented an apartment in a duplex. Another apartment in the duplex was rented by a female resident, who lived alone. The female came home late on March 22, 2003 and went to sleep. She awoke in the early morning hours of March 23, 2003 to find Dalton in her home standing over her. The female was subjected to a series of sexual assaults, including forced cunnilingus, digital penetration, and groping. During the attack, the female physically fought Dalton, including burning him with a cigarette, and forced herself to vomit in an attempt to repulse Dalton. Finally, the female was able to convince Dalton to leave.
 {¶ 3} Immediately after Dalton left, the female called the police, who arrived within minutes. After speaking with the female, the police suspected that Dalton was in his friend, Lawrence's, portion of the duplex. After initially denying Dalton's presence, Lawrence finally permitted the police to search his residence and admitted to the police that Dalton was hiding in the attic. Dalton refused to come out of the attic or even acknowledge the officers' presence. The police engaged in lengthy negotiations in an attempt to have Dalton come out of the attic, which included the use of pepper spray, tear gas, and the threat of being shot with a bean bag gun. Finally after an hour of negotiation and extraction methods, Dalton surrendered and was taken into custody.
 {¶ 4} Dalton was taken by the Fairborn police to the Fairborn jail. While there the police searched Dalton and found a bag of white powder in his pocket, which was placed into evidence for further testing. Dalton asserted his right to remain silent and never accepted responsibility for the van, the illicit drugs, or equipment to manufacture illicit drugs until his testimony in his defense at trial in November of 2003.
 {¶ 5} After securing Dalton, the police noticed his van parked in the driveway. The police officers looked in the window of the van and noticed several items that are commonly associated with Methamphetamine production. Several hours after Dalton was arrested for burglary and rape, the police obtained a search warrant and entered Dalton's van. In searching the vehicle, the police found several pills, glassware and chemicals that they believed were contraband The officer collected these items as evidence and sent them to a lab for further analysis. The results from the laboratory's analysis were not completed and compiled into reports sent to the police until April 21 and 22 of 2003. These reports confirmed that one of the pills found was hydrocodone and that the equipment in the van had been used to make Methamphetamine. Also, the reports indicated that the bag of white powder found on Dalton when he was arrested was Methamphetamine.
 {¶ 6} On April 4, 2003, Dalton was indicted on one count of aggravated burglary, four counts of rape, three counts of gross sexual imposition, and one count of kidnapping with a sexual motivation specification. On October 9, 2003, Dalton was reindicted on these original counts and three additional charges. The three additional charges were two counts of aggravated possession of drugs and one count of illegal assembly or possession of chemicals for the manufacture of drugs. The original indictment was dismissed on October 20, 2003.
 {¶ 7} On November 4, 2003, a jury trial was begun on the charges in the new indictment. Prior to trial, Dalton filed a motion to dismiss the three additional counts that were not listed in the original indictment, alleging they violated the speedy trial statute. A hearing on the motion was conducted on the morning of the trial. The trial court overruled the motion and the case proceeded to trial. The jury convicted Dalton of illegal assembly or possession of chemicals for the manufacture of drugs and two counts of aggravated possession of drugs. As to the remaining counts, the jury deadlocked.
 {¶ 8} Dalton has filed this appeal from the judgment of the trial count, raising the following assignment of error:
 {¶ 9} "The trial court erred when it denied defendant appellant's motion to dismiss and to discharge as to the charges of illegal possession of methamphetamine, illegal possession of hydrocodone, and illegal possession of chemicals with which to manufacture methamphetamine."
 {¶ 10} Dalton argues in his assignment of error that his right to a speedy trial was violated because the speedy trial time calculation on the three additional charges should run from the date of the original indictment because these charges arose from the same factual circumstances as the charges filed in the original indictment. We disagree.
 {¶ 11} In State v. Adams (1989), 43 Ohio St.3d 67, the Ohio Supreme Court stated that, "[w]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." However, after decidingAdams the Supreme Court issued an opinion on the issue in State v.Baker, 78 Ohio St.3d 108, 1997-Ohio-229. In Baker, the Court stated that when "issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or thestate did not know of these facts at the time of the initial indictment." Id. (emphasis added). Additionally, in Baker, the Court stated that the speedy trial time on the subsequent indictment begins to run when the charge is filed rather than the time the State learned of the new facts upon which the charge is based. Id. at 111-112.
 {¶ 12} This Court has applied the Baker decision in State v. Lekan
(June 27, 1997), Montgomery App. No. 16108 and State v. Cantrell (Sept. 7, 2001), Clark App. No. 00CA0095. In Lekan, this Court examined a case where an individual was charged with driving under the influence of alcohol and then approximately two months later was charged with driving with a prohibited concentration of alcohol in his system. Lekan, supra. Both charges arose out of the same incident. Id. On the date Lekan was charged with driving under the influence, a urine sample was taken and sent to a laboratory for analysis. Id. The results of this lab work were sent to the police approximately a week later. Id. Yet, the police did not file the second indictment until nearly two months later. Id. This Court held that pursuant to Baker, Lekan's speedy trial rights were not violated because the charges were dependent on laboratory analysis and the analysis had not been completed at the time of the initial indictment. Id. In Lekan, we specifically stated that the two month delay in filing the second indictment appeared to be of no consequence since inBaker a delay of over eight months from the time the state was in possession of the information justifying the indictment and its actual filing of an indictment did not create a speedy trial statute violation. Id.
 {¶ 13} Similarly in Cantrell, the defendant was arrested and charged on the same date with operating a motor vehicle while under the influence of alcohol and two other traffic violations that arose from an accident.Cantrell, supra. On the same date, a blood sample was taken from Cantrell and sent to a crime laboratory for analysis. Id. Cantrell's blood was analyzed and found to contain a prohibited concentration of alcohol. Id. The results of the laboratory analysis were sent to the highway patrol office nearly a month after the accident and initial indictment. Id. Approximately three months after the initial indictment, Cantrell was also charged with operating a motor vehicle with a prohibited concentration of alcohol in his blood. Id. This charge arose out of the same incident as the charge previously filed. Id. In Cantrell, we stated that since the facts giving rise to the second indictment were not available at the time of the initial indictment but did not become available until the state learned of the laboratory results nearly a month later, the speedy trial timetable did not run from the date of the initial indictment or from the date the state learned of the facts prompting the new charges but from the date of the second indictment. As in Baker, Lekan, and Cantrell, we find in the instant case that the speedy trial timetable ran from the date of the second indictment, not the initial indictment. In the instant case, Dalton was arrested on the burglary and rape charges on March 23, 2003. Although the police officers may have suspected that some of the pills, the white powder found on Dalton, and the equipment in the van were illegal contraband or illegal equipment used to make illicit drugs, without the laboratory results they did not know what offenses were being committed. At the hearing on Dalton's motion to dismiss, the police detective stated that laboratory analysis of the powder, pills, and items found in the van were necessary to bring charges against Dalton. (T. 27). Additionally, the police needed the laboratory test results on the materials and components in the van to see if they had been used to make methamphetamine. (T. 36). Dalton was initially indicted on the burglary and rape charges on April 4, 2003, along with counts of kidnapping and gross sexual imposition. The reports from the crime laboratory indicating that Dalton had been in possession of methamphetamine and hydrocodone and that his van was indeed a mobile laboratory for making methamphetamine were not sent to the police until April 21 and 22, 2003. Therefore, the facts supporting the additional charges of illegal possession of methamphetamine and hydrocodone, and illegal possession of chemicals with which to manufacture methamphetamine were not known to the State until April 21 and 22, 2003 after the initial indictment on April 4, 2003. Therefore, pursuant to Baker, the speedy trial timetable does not run from this initial indictment date.
 {¶ 14} Although the State was aware on April 22, 2003 of the facts supporting the additional charges and did not file a second indictment until October 9, 2003, as we said in Lekan, this appears to be irrelevant under Baker. In Baker, the defendant's speedy trial rights were not found to be violated despite a lapse of over eight months from the time the State was in possession of the information and the date when it filed the second indictment. Here, although over five months elapsed from the time the State had received the laboratory results and the time that they indicted him on the drug charges, based on Baker this appears inconsequential. Having reviewed the facts of this situation and applying them to the standard set forth in Baker, we find the speedy trial timetable for the drug charges did not begin to run until the second indictment on October 9, 2003 and that Dalton's speedy trial rights were not violated by the November 4, 2003 trial date.
 {¶ 15} Dalton's assignment of error is without merit and is overruled. The judgment of the trial court is affirmed.
Brogan, J. and GRADY, J., concur.