OPINION
{¶ 1} Defendant-appellant, Antonio M. Harrison, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of voluntary manslaughter. Because the trial court did not err in admitting the contested evidence, and because sufficient evidence and the manifest weight of the evidence support the jury's verdict, we affirm.
 {¶ 2} Defendant was charged with one count of aggravated murder, in violation of R.C. 2903.01, with a firearm specification. On May 19, 2006, a jury convicted defendant *Page 2 
of the lesser-included offense of voluntary manslaughter with the specification. The trial court sentenced defendant to six years on the involuntary manslaughter charge, with a three-year consecutive sentence for the firearm specification. Defendant appeals, assigning the following errors:
 [I.] THE TRIAL COURT ERRED BY ALLOWING HEARSAY STATEMENTS FROM A 911 TAPE OVER THE DEFENSE'S OBJECTION.
 [II] THE VERDICT IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 3} On November 7, 2005, defendant shot and killed 29-year-old Shariff Banks. The state sought to prove defendant shot Banks with prior calculation and design; defendant argued he shot the victim in self-defense.
 {¶ 4} According to the state's evidence, Officer Scott Bowman of the Columbus Police Department was dispatched to 1008 E. 17th
Avenue on November 7, 2005. The first officer to arrive at the scene, Bowman entered the residence and observed Banks lying on the stairway with his feet near the bottom landing. Banks appeared to be shot or stabbed and was bleeding badly. Also present at the scene were Tiara Harrison, who was not only Banks' girlfriend but the sister of defendant, and Shemitria Goudy, Tiara's cousin. Bowman testified he was not aware that anyone else was in the house at that time. The two women told Bowman that "Man-Man" did it. (Tr. Vol. I, 36.) Defendant's family called him "Man-Man." Id. at 145, 157. Banks was rushed to the hospital where he eventually died.
 {¶ 5} Detective Philip Walden of the Crime Scene Search Unit arrived at the scene and conducted a search of the entire residence, taking photographs and collecting *Page 3 
evidence. A .45 semi-automatic handgun was discovered under the mattress in an upstairs bedroom. Walden testified the gun appeared to have blood on it. Detective Pat Dorn of the Columbus Police Department concluded the .45 semi-automatic, identified as belonging to the victim, was not fired that day because no shell casings were found. Although Detective Walden did not recover any other weapons in the initial search, several hours later another detective called him and asked him to return to the scene. Upon returning, Walden recovered a .38 revolver, identified as the gun belonging to defendant's mother. Someone had placed the .38 revolver in a plastic bag and left it on the front porch.
 {¶ 6} Walden testified that a blood transfer was on the doorjamb of the front door of the residence. Walden explained that a transfer, as opposed to a blood drop, is when something is touched or bumped. According to Walden, the transfer demonstrated Banks' possible path after he was shot. Walden further testified the blood trail inside the residence, mainly on the stairs and landing where the victim was found, appeared to stop at the landing at the top of the stairs. Walden did not see any blood transfers in any upstairs rooms or areas.
 {¶ 7} The coroner, Dr. Jan Gorniak, testified the victim was shot two times. One bullet, but not necessarily the first to be fired, entered near Banks' left hip area and exited through the groin area; the other entered through the victim's right back region and exited through the ribs. Gorniak testified that both bullets traveled back to front, left to right. Banks died as a result of the bullet entering his back and perforating his lung, causing him to bleed to death. *Page 4 
 {¶ 8} According to defendant's testimony, defendant and his girlfriend, Deetria Scott, went to his mother's place of employment to pick up her paycheck on the morning of November 7, 2005. At some point, defendant's cousin joined them. After receiving the paycheck, the three of them returned to defendant's residence at 1008 E. 17th
Avenue. Around noon, defendant's sister, Tiara Harrison, returned to the residence with her boyfriend Banks, her sister Maquela, and her cousin Shemitria.
 {¶ 9} When Tiara came into the house, she began to yell at Deetria, accusing her of secretly talking negatively about Tiara. As the argument escalated, Tiara told Deetria she was going to beat her. Eventually, Banks and defendant shoved each other and were about to fight. Tiara grabbed Banks' gun from him and pointed it at defendant. Banks retrieved his gun from Tiara and went upstairs. According to defendant, he never saw the gun again prior to the shooting.
 {¶ 10} Defendant and Tiara were still fighting and arguing. Tiara grabbed a can of mace and began to spray the people in the house, including defendant and Deetria. Angry, defendant punched a hole through a door and then washed the mace from his face in his mother's bathroom, located on the first floor of the residence. Defendant tried to go upstairs, but Tiara and Shemitria stopped him by pulling his feet out from under him, causing defendant to fall and hit his face; defendant became more angry. At some point, Banks came back downstairs and observed defendant grabbing Tiara's shirt. Banks told defendant to leave Tiara alone and shoved defendant. Banks and defendant began shoving each other and eventually went outside.
 {¶ 11} According to defendant, once he and Banks were outside Banks reached to his right side as if he were reaching for his weapon. Defendant, his mother, and Deetria *Page 5 
all testified Banks was known to carry a gun on his right side. Fearing for his life, defendant shot Banks two times and ultimately killed him, though defendant testified he did not intend to kill the victim. Tiara also suffered a minor bullet graze to her leg, but defendant testified that Tiara was not outside at the time of the shooting.
 {¶ 12} Defendant testified Banks went back into the residence after being shot, causing Tiara to scream at Deetria that defendant shot Banks. Deetria left the house and caught up with defendant outside as he was "walking across the street." (Tr. Vol. II, 306.) They headed for his cousin's house around the corner but ultimately went elsewhere. Defendant testified he left the scene because he was scared. Ten days later, defendant turned himself in to the police. Immediately after Deetria left, Tiara called 911, telling the operator "my brother just shot my dude." (Tr. Vol. I, 61.) The operator asked Tiara where her brother was; Tiara replied, "He's gone." Id.
 {¶ 13} Defendant's mother testified she kept a gun underneath her mattress in her bedroom. According to defendant, when he left the house that morning to retrieve his mother's paycheck, he took his mother's gun and carried it with him the rest of the day. Defendant explained that because he intended to go to his cousin's house that day, where a man shot at him a few days earlier, he felt he needed the gun for protection. Contrary to his mother's testimony that she kept the gun unloaded with the trigger lock set, defendant stated the gun was loaded and the trigger lock was not set.
I. First Assignment of Error {¶ 14} In the first assignment of error, defendant argues the trial court wrongly admitted into evidence the portion of the 911 tape where Tiara stated her brother was gone. The 911 dispatcher asked, "Where's your brother? Where's your brother?" (Tr. Vol. *Page 6 
I, 62.) Tiara replied, "He's gone." Id. Defendant contends the statement that he was gone was not based on anything Tiara directly observed. Defendant further maintains the statement impermissibly allowed the jury to presume defendant fled the scene, and it thus required defendant to testify in his own defense to explain his actions.
 {¶ 15} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Robb (2000), 88 Ohio St.3d 59,68. Absent an abuse of discretion, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v.Martin (1985), 19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151.
 {¶ 16} Hearsay is a statement, other than one the declarant made at trial, offered into evidence to prove the truth of the matter asserted. Evid.R. 801(C). Although hearsay generally is inadmissible as evidence under Evid.R. 802, numerous exceptions exist. Defendant states the trial court admitted the statement under the exception embodied in Evid.R. 804(A)(2), pertaining to a witness who persists in refusing to testify despite a court order to do so. The record, however, is unclear about the specific basis for the trial court's decision to admit the evidence. The record as a whole, however, suggests the statement is admissible as an excited utterance pursuant to Evid.R. 803(2).
 {¶ 17} Evid.R. 803(2) deems admissible "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In order to be admissible, (1) an event startling enough to produce a nervous excitement in the declarant must occur; (2) the statement must have been made while the declarant still is under the stress of excitement the event caused; (3) the *Page 7 
statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. State v. Taylor (1993),66 Ohio St.3d 295. The court also should consider the lapse of time between the event and the statement, the mental and physical condition of the declarant, the nature of the statement, and the influence of intervening circumstances. State v. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439.
 {¶ 18} Here, defendant does not seriously dispute that a startling event occurred to produce nervous excitement in Tiara: her boyfriend was shot immediately prior to Tiara's calling 911. Tiara's statement, made during the 911 call while Banks was bleeding profusely but still alive, unquestionably related to the startling event. Additionally, although the evidence is inconsistent about whether Tiara saw defendant shoot the victim, Tiara in any event observed Banks immediately after he was shot, as she was trying to do what she could to get him help. Based on the circumstances surrounding the statement, it arguably was properly admitted as evidence under Evid.R. 803(2).
 {¶ 19} Even if the statement be inadmissible, any error in its admission was harmless: the erroneous admission of hearsay, cumulative to properly admitted testimony, constitutes harmless error. State v.Williams (1988), 38 Ohio St.3d 346; State v. Babb, Cuyahoga App. No. 86294, 2006-Ohio-2209; State v. Zwelling, Muskingum App. No. CT05-0048,2006-Ohio-2954. Here, Officer Bowman testified he was not aware of anyone else being in the house when he arrived at the scene, thereby suggesting defendant's earlier departure. According to Deetria, after Banks was shot and came back inside, she went outside. She stated that "when I went outside Antonio [defendant] was standing there. And I just ran down the street with him." (Tr. Vol. II, 270.) Explaining *Page 8 
further, she testified that "[o]nce — I know once I got outside I just seen my boyfriend and I just, what I did, I just left with my man." Additional testimony indicated the detectives could not find defendant for the next ten days, when he finally turned himself in to police.
 {¶ 20} Even if we disregard defendant's own testimony that he left the scene, Tiara's statement was cumulative of the above-noted, rightly-admitted testimony. The jury could properly conclude defendant fled the scene without considering the 911 tape. Accordingly, defendant's first assignment of error is overruled.
II. Second Assignment of Error {¶ 21} In the second assignment of error, defendant argues that neither sufficient evidence nor the manifest weight of the evidence supports the jury's verdict finding him guilty of voluntary manslaughter and rejecting his self-defense evidence.
 {¶ 22} Generally, a review of the sufficiency of evidence is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus;State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 23} A review for sufficiency of the evidence does not apply to affirmative defenses, as such a review does not consider the strength of defense evidence. State v. Jennings, Franklin App. No. 05AP-1051,2006-Ohio-3704. "`The due process "sufficient evidence" guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.'" Id. ¶ 28, quoting State v. *Page 9 Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37, quoting Caldwell v.Russell (C.A.6, 1999), 181 F.3d 731. A sufficiency review is applied to the substantive elements of the crime as state law defines them.Jackson v. Virginia (1979), 443 U.S. 307. Under Ohio law, self-defense is an affirmative defense. State v. Calderon, Franklin App. No. 05AP-1151, 2007-Ohio-377, citing State v. Williford (1990),49 Ohio St.3d 247. Accordingly, a review for sufficiency of the evidence is not implicated because self-defense does not involve the substantive elements of aggravated murder.
 {¶ 24} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt.Conley, supra; Thompkins, supra, at 387 (stating that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact-finder's resolution of the conflicting testimony"). The court, reviewing the entire record, determines whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 25} To establish self-defense, a defendant must demonstrate (1) he was not at fault in creating the situation; (2) he had a bona fide belief that he was in imminent danger *Page 10 
of death or great bodily harm and the only means of escape was to use force; and (3) he did not violate any duty to retreat or avoid the danger. Williford, supra. A defendant is privileged to use as much force as is reasonably necessary to repel the attack. State v. Jackson (1986),22 Ohio St.3d 281. A defendant must demonstrate each of the three elements of the defense by a preponderance of the evidence.Calderon, supra; R.C. 2901.05(A).
 {¶ 26} On appeal, defendant argues he had a bona fide belief he was in imminent danger of death or great bodily harm and the only means of escape was the use of force. In support, defendant asserts the evidence demonstrates (1) the victim was known to carry a gun; (2) blood was found on Banks' .45 semi-automatic found underneath the mattress; and (3) defendant was shot at a few days earlier, thereby intensifying his belief that the victim was going to shoot him.
 {¶ 27} The state argued that self-defense was unavailable to defendant, basing its contentions on several facts: (1) both bullets entered the victim's body through the back and traveled front; (2) the gun identified as belonging to the victim was found in an upstairs bedroom underneath a mattress; (3) although the gun appeared to have blood on it, no evidence suggested the blood was the victim's; (4) the blood trail stopped at the top landing of the stairs, indicating the victim may have attempted to get upstairs after being shot, but never made it to the bedroom where he earlier put his gun after taking it away from Tiara.
 {¶ 28} The jury's rejection of defendant's self-defense argument is not against the manifest weight of the evidence. While Detective Walden testified the weapon appeared to have blood on it, no evidence whatsoever was admitted to establish whose blood it *Page 11 
was. As a result, the evidence was unresolved about whether the blood transferred to the gun was that of the victim. In addition, the testimony revealed that after the victim retrieved his gun from Tiara early in the altercation, he went upstairs. Defendant admitted he did not see the victim's gun after that point in time. Further damaging defendant's contentions, Walden did not find any blood in the bedrooms or other areas upstairs, but instead the blood trail appeared to stop at the top of the landing.
 {¶ 29} Based on such testimony, the jury reasonably could conclude that defendant did not have a reasonable belief that the victim was carrying a gun at the time defendant shot him. In addition, because the coroner testified both bullets traveled from back to front, a reasonable juror could conclude defendant did not have a reasonable belief he was in imminent danger of death, with the only means of escape being the use deadly force, when he shot defendant from behind.
 {¶ 30} With regard to voluntary manslaughter, sufficient evidence and the manifest weight of the evidence support the jury's verdict finding defendant guilty. R.C. 2903.03 defines voluntary manslaughter, stating that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage * * * shall knowingly cause the death of another." The offense contains a "subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." State v. Shane (1992), 63 Ohio St.3d 630,634; State v. Copley, Franklin App. No. 04AP-511, 2005-Ohio-896.
 {¶ 31} Both Deetria and defendant testified to the escalating emotions before the shooting occurred. The evidence demonstrated that a fight ensued between the defendant and Banks as the result of a disagreement between their respective girlfriends. *Page 12 
According to defendant, he and Banks verbally jousted and engaged in shoving matches; according to Deetria, they also put their fists up as if to fight.
 {¶ 32} The episode then became more aggravated. After Tiara maced defendant, defendant was angry enough to punch a hole through a door. Tiara and Shemitria pulled defendant's feet out from under him to prevent him from going upstairs, possibly because Banks was still upstairs. In falling, defendant hit his face, a result that did not assuage his anger. When Banks came downstairs, he and defendant were shoving each other. Eventually, they moved their fight outside where Banks was still yelling, screaming, and threatening defendant. Defendant admitted he was angry prior to shooting the victim.
 {¶ 33} If we construe the evidence in a light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of voluntary manslaughter proven beyond a reasonable doubt. The evidence of defendant's sudden anger at the escalating situation allowed a reasonable juror to believe defendant acted under its influence. Further, sitting as the thirteenth juror, we cannot say that the jury's resolution of the conflicting testimony was erroneous or that the jury clearly lost its way. Defendant essentially claims that the jury should have believed him. A conviction, however, is not against the manifest weight of the evidence solely because the trier of fact heard conflicting testimony. State v. Butts, Franklin App. No. 03AP-495,2004-Ohio-1136; State v. Kendall (June 29, 2001), Franklin App. No. 00AP-1098. Based on all the evidence, the jury reasonably determined that defendant shot Banks while under the influence of sudden passion or in a sudden fit of rage. Accordingly, the verdict is not against the manifest weight of the evidence. Defendant's second assignment of error is overruled. *Page 13 
 {¶ 34} Having overruled defendant's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 FRENCH and McGRATH, JJ., concur. *Page 1