[Cite as *State v. Vasquez*, 2014-Ohio-224.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

        Plaintiff-Appellee,                    :
                                                 No. 13AP-366
v.                                                     :        (C.P.C. No. 12CR-09-4518)

Nestor E. Vasquez,                                     :        (REGULAR CALENDAR)

        Defendant-Appellant.                   :

D E C I S I O N

Rendered on January 23, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

*The Law Office of Jennifer L. Coriell, LLC*, and *Jennifer L. Coriell*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Defendant-appellant, Nestor E. Vasquez, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of felonious assault and attempted murder with corresponding firearm specifications. For the following reasons, we affirm the judgment of the trial court.

I. BACKGROUND

{¶ 2} On September 5, 2012, appellant was indicted in Franklin County case No. 12CR-4518 for one count of felonious assault with specification, in violation of R.C. 2903.11, and attempted murder with specification, in violation of R.C. 2923.02 as it relates to R.C. 2903.02. The indicted charges arose out of the August 26, 2012 shooting of

Santos Guerrero. On November 21, 2012, appellant was indicted in Franklin County case No. 12CR-5966 for one count of heroin possession, in violation of R.C. 2925.11, concerning heroin found in appellant's apartment on the day of the shooting. According to the record, at the latest, appellant was served with the second indictment on November 26, 2012.

{¶ 3} As this case proceeded, appellant requested discovery from plaintiff-appellee, State of Ohio, on September 14, 2012, and the state filed its response thereto on October 14, 2012. Trial was first set for October 31, 2012, but the matter was continued by joint request of the parties until November 13, 2012. Thereafter, trial was continued upon the state's motions until January 14, 2013, on which date trial commenced.

{¶ 4} On the morning of trial, appellant filed a motion to dismiss the charges contained in the September 2012 indictment for violation of his speedy trial rights. After hearing oral arguments of the parties, the trial court denied the motion from the bench and proceeded with voir dire of the jury. During trial, the jury heard testimony from several witnesses, including appellant, the victim, witnesses from the scene, and responding law enforcement officers.

{¶ 5} According to Columbus Police Officer William Pennell, at approximately 1:30 a.m. on August 26, 2012, he was called to the scene of a shooting at 1482 Elaine Road. Officer Pennell was the first officer to arrive at the scene where he observed a group of individuals standing around a male lying on the ground in front of the stoop of apartment B. The victim was nonresponsive and appeared to have multiple gunshot wounds. Officer Pennell was informed by witnesses at the scene that after hearing gunshots, they saw the man that lives in apartment B walking to the rear of the apartment building with a gun. After other officers arrived, Officer Pennell knocked on the door of apartment B, whereupon "[t]he door opened, and there was a male on his knees, basically with his hands up in the air, unintelligible. I don't know what he was saying. And there was an obvious live – live round of ammunition right inside the front door." (Tr. 77.) Appellant was arrested and taken to police headquarters. Though not appearing to be injured, Columbus Police Detective Kevin Jackson testified appellant had what appeared to be blood on his wrist, fingers, and clothes.

{¶ 6} Guerrero testified that at the time of this incident he was living at 1482 Elaine Road, Apartment A. Guerrero testified he met appellant when he moved into the apartment complex about eight or nine months prior to the shooting. According to Guerrero, he and appellant socially interacted as they would "go out, go to a restaurant, drink a beer, talk, normal." (Tr. 138.) Prior to the shooting, Guerrero testified he had been enjoying his day off and "hanging out with some friends" and that as he was walking back to his apartment, he saw appellant's brother-in-law, Tulo, standing outside. (Tr. 139.) Guerrero testified that he was talking with Tulo when appellant came outside. As to what happened next, Guerrero testified, "It looked like he was angry, so I asked him what's up. Then he didn't answer. Then I remember telling him chill out. That's when he pulled out a gun and started shooting." (Tr. 140.)

{¶ 7} Guerrero further testified, "I put my hands up. That was my first reaction. Then he just started shooting. And I fell, and I think when I was on the floor, he just continued shooting, and I passed out. I tried to like got up and crawl so I could ask for help. I remember waking up in the hospital." (Tr. 141.)

{¶ 8} Guerrero denied being in appellant's apartment that night, having any weapons on his person, threatening appellant or saying anything to appellant other than "chill out." According to Guerrero, Tulo and appellant's wife witnessed the incident, and Guerrero remembered appellant's wife screaming and telling appellant to stop. Guerrero testified, "I think he stopped for a minute. Then he just started shooting again because I remember when he hit me in the arm, I still got up a little. I think that's when he got the chance to shoot me in my stomach." (Tr. 142.) Guerrero testified he was shot nine times, and, though he tried to crawl for help, he passed out. Guerrero did remember appellant's cousin coming outside and keeping him awake until the ambulance arrived. Guerrero identified appellant as the shooter in a photo array shown to him by police at the hospital.

{¶ 9} Anthony Edwin Flores, Jr., testified that, at the time of the shooting, he lived with his mother at 1484 Elaine Road, Apartment A. At that time, Flores had known Guerrero for about eight months and had known appellant for "10, 12 years." (Tr. 166.) According to Flores, he woke to the sound of eight or nine gunshots, which caused him and his brother-in-law, Jose Burgos, to run outside. Flores was asked what happened when they went outside, to which Flores responded, "We seen [Guerrero] laying on the

ground, so we ran over to him, and we seen that he was bleeding. And as our way back to the house, we seen [appellant] come from behind his building. And he cocked the gun and pointed it at me and my brother-in-law and asked us if we want some." (Tr. 169-70.) Flores testified he and Burgos then called the police.

{¶ 10} Burgos testified that, at the time of the incident, he lived in the same apartment as Flores and had known Guerrero and appellant for approximately four months. Burgos heard four or five gunshots and looked outside to see Guerrero lying on the ground. Burgos testified:

> I ran over to him to see if everything was okay. I assumed that he might have just been drunk, so as I was rolling him over, he was covered in blood. We just spoke for a moment. He told me to get help. I ran back to the house to get a phone and called the police. Then I ran back to see if he was still okay, and by that time my brother-in-law was with me.
>
> Q. Okay. So that's Anthony?
>
> A. Yes.
>
> Q. So your second time out then Anthony's with you?
>
> A. Yes. Then on the way back after we had called the ambulance, we walked back towards the house, our house, and [appellant] appeared from between the buildings with a firearm and pointed it in our direction and asked us if we wanted some too.

(Tr. 184.)

{¶ 11} Gun shot residue testing of appellant conducted shortly after the shooting was positive. From appellant's apartment, police recovered a magazine and two boxes of 9mm ammunition. The gun used in the shooting was not found.

{¶ 12} Inocente Reynoso, also known as Tulo, testified that, on August 26, 2012, he lived with appellant and appellant's family. According to Tulo, he left the apartment with some friends at approximately 5:00 p.m. the evening prior to the shooting and when he returned to the apartment, he saw yellow tape and many police officers. Tulo testified he did not witness a confrontation between appellant and Guerrero, nor did he have any information about the shooting or any of the events of August 26, 2012.

{¶ 13} Appellant testified on his own behalf that during the afternoon of August 25, 2012, he went to a party with a friend. Upon returning home, appellant saw someone standing in front of his apartment door. Therefore, appellant went around to the side of the building and entered the apartment through the kitchen door in the back of the apartment. After he entered the apartment, appellant testified he heard a noise causing him to walk towards the kitchen. Appellant testified he took a gun from a drawer and loaded it as he walked towards the living room whereupon he "saw someone standing there in front of [his] children." (Tr. 345.) Appellant testified:

> When he saw me, he wanted to jump on me like to assault me, so I took a step back. I had my gun on me, but I had it pointing down. I didn't have the -- I didn't have my finger in the trigger yet. When the guy came and jumped on top of me, I shot once. I don't know if I hit him or not.
>
> When I shot him, he wanted to leave the apartment. He had one foot inside of the apartment. One foot was on the porch.
>
> So I thought of my children. I thought he had hurt my children because he was in front of them.
>
> When I shot him the first time, my wife woke up. She yelled at me. She was behind me and yelled at me.
>
> The lights were off. I couldn't see who it was or anything. I kept shooting at the guy, thinking of my children, thinking that something was wrong with my wife because she had yelled at me from behind. I didn't know if she was okay.
>
> When I turned around after I shot the guy, he was outside standing like this. He turned around towards me, so then I kept shooting at him. I got close to the door. I stuck out my arm, just this part, outside of the door, and I kept shooting, thinking of my kids. I thought he had done something to my children.

(Tr. 345-46.)

{¶ 14} According to appellant, he went back into his apartment to talk to his wife but he could not find her. Therefore, he left the apartment to go to his cousin's apartment. After no one answered the door at his cousin's apartment, appellant testified he saw "two guys standing there." (Tr. 347.) Though unable to recall if he said anything

to them or not, appellant testified, "I didn't point my gun at them like they say I did."  (Tr. 347.)   Appellant then went back to his apartment.   Appellant further testified, "That's when I got nervous.  I didn't know what to do, so then that's when I think I closed the door.  I don't know.  So then that's when the police came.  They knocked on the door.  I opened the door, raised my hands, and then they took me to the police station."  (Tr. 347.)

{¶ 15} On cross-examination, appellant testified the gun he used did not belong to him but, rather, belonged to a friend that appellant was permitting to stay at his apartment.  Appellant also testified that he did not know what happened to the gun after the shooting.

{¶ 16} The jury returned verdicts of guilty on the attempted murder and felonious assault charges, as well as the specifications for use of a firearm.  A sentencing hearing was held, and, after merger of the offenses, appellant was sentenced to an aggregate prison term of 14 years concurrent to the sentence imposed in case No. 12CR-5966.  A judgment reflecting the same was filed on April 10, 2013.

## II.  ASSIGNMENTS OF ERROR

{¶ 17} This appeal followed and appellant brings the following assignments of error for our review:

> [I.] The trial court abused its discretion by overruling appellant's motion to dismiss because appellant's sixth amendment right to a speedy trial was violated and because the state acted without reasonable diligence in commencing the action against appellant in a timely manner.
>
> [II.] Insufficient evidence existed to convict appellant and appellant's convictions were against the manifest weight of the evidence.

## III.  DISCUSSION

### A.  First Assignment of Error

{¶ 18} In his first assignment of error, appellant argues the trial court erred in denying his motion to dismiss for violations of both his statutory and constitutional rights to a speedy trial.

{¶ 19} An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Ohio

Constitution, Article I, Section 10. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32. Ohio's speedy trial statute, R.C. 2945.71, endeavors to comply with constitutional standards by designating specific timetables for which an accused must be brought to trial. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, ¶ 14.

{¶ 20} Pursuant to R.C. 2945.71(C)(2), a person "against whom a charge of felony is pending" must be brought to trial within 270 days after the person's arrest. When computing the time for purposes of applying R.C. 2945.71(C)(2), each day during which the accused is held in jail in lieu of bail solely on the pending charge shall be counted as three days, meaning the accused must be tried within 90 days if he or she is incarcerated. R.C. 2945.71(E); *State v. Carmon*, 10th Dist. No. 11AP-818, ¶ 14 (Apr. 10, 2012). However, the time period in which to bring a defendant to trial may be extended for any of the reasons enumerated in R.C. 2945.72. Further, the arrest date is not chargeable to the state in computing speedy trial time. *State v. Madden*, 10th Dist. No. 04AP-1228, 2005-Ohio-4281, ¶ 28.

{¶ 21} Here, appellant was arrested on August 26, 2012, and his trial began on January 14, 2013. Because appellant was incarcerated during this time period, appellant asserts the triple-count provision of R.C. 2945.71(E) applies so that for speedy trial purposes, he was required to be brought to trial within 90 days of his arrest. Upon demonstrating that more than 90 days elapsed before trial, a defendant establishes a prima facie case for dismissal based on a speedy trial violation. *State v. Miller*, 10th Dist. No. 06AP-36, 2006-Ohio-4988, ¶ 9. Once a defendant establishes a prima facie case for dismissal, the state bears the burden to prove that time was sufficiently tolled and the speedy trial period extended. *Id.*; *State v. Butcher*, 27 Ohio St.3d 28, 31 (1986). Hence, the proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72. *State v. Jackson*, 10th Dist. No. 02AP-468, 2003-Ohio-1653, ¶ 32, citing *State v. DePue*, 96 Ohio App.3d 513, 516 (4th Dist.1994).

{¶ 22} In order to meet its burden, the state argues not only that the speedy trial time was tolled for discovery and continuances, but also that the triple-count provision of R.C. 2945.71(E) does not apply to the entire time period at issue here. The parties do not dispute that a portion of the time was tolled for discovery and trial continuances. Nor do

the parties dispute that, at least initially, the triple-count provision of R.C. 2945.71(E) applied to the non-tolled days between August 26 and November 26, 2012. Rather, the dispute herein pertains to whether or not the triple-count provision of R.C. 2945.71(E) applies to the days following November 26, 2012 when appellant was served with the subsequent indictment. If the triple-count provision does not apply to said period, appellant was brought to trial well within the allotted 270 days. If, however, the triple-count provision does apply, appellant is correct that his statutory speedy trial rights were violated.

{¶ 23} As recognized in *State v. Mohamed*, 10th Dist. No. 08AP-960, 2009-Ohio-6658, cases involving subsequent indictments can be problematic with respect to the issue of speedy trial rights. *Id.* at ¶ 28. In *State v. Adams*, 43 Ohio St.3d 67 (1989), the Supreme Court of Ohio determined that, where new and additional charges arise from the same set of facts as those found in the original charge and the state knew of those facts at the time of the initial indictment, the time frame within which the new charge is to be tried is subject to the same statutory limitations period as that which is applied to the original charge.

{¶ 24} Subsequently, in *State v. Baker*, 78 Ohio St.3d 108 (1997), the Supreme Court established that, where additional charges arose from the same facts as the facts supporting the original indictment, the subsequent charges are subject to the same speedy trial constraints as the original charges. But, "in issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." *Id.* at 110.

{¶ 25} Thereafter, in *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, the Supreme Court went on to decide "the holdings of *Baker* and *Adams* * * * combined, stand for the proposition that speedy-trial time is not tolled for the filing of later charges that arose from the facts of the criminal indictment that led to the first charge." *Id.* at ¶ 20. Therefore, under *Parker*, the time would count against the state if the subsequent indictment arose from the same facts as those that made up the original indictment. However, *Baker* does provide for two scenarios in which the state is not held to the speedy trial time clock of the initial indictment: (1) when additional criminal charges arise from

new facts not present at the time the original charges were filed, or (2) when the state did not know of these facts at the time of the initial indictment. "The holding in *Baker* is disjunctive and specifically sets forth two scenarios, either of which will reset the speedy-trial timetable for charges arising from a subsequent indictment." *Mohamed* at ¶ 30, quoting *State v. Thomas*, 4th Dist. No. 06CA825, 2007-Ohio-5340, ¶ 17.

{¶ 26} The *Parker* court also held, "when multiple charges arise from a criminal incident and share a common litigation history, pretrial incarceration on the multiple charges constitutes incarceration on the 'pending charge' for the purposes of the triple-count provision of the speedy trial statute, R.C. 2945.71(E)." *Id.* at ¶ 21. The court further explained, "[c]riminal charges arising out of the same criminal incident and brought simultaneously will always be deemed to have a 'common litigation history' for the purposes of establishing incarceration solely on the 'pending charge' within the meaning of R.C. 2945.71(E), even if they are prosecuted in separate jurisdictions." *Id.* at ¶ 25.

{¶ 27} In *State v. Freeman*, 6th Dist. No. L-09-1086, 2010-Ohio-1357, the Sixth Appellate District considered an argument similar to that presented by appellant. In that case, police responded to the report of a burglary in progress where they saw the defendant's unoccupied and apparently abandoned vehicle smashed against a tree. Because the vehicle was inoperable, police were required to have the vehicle towed. During an inventory search of the vehicle, police discovered a suitcase containing suspected crack cocaine, bootleg DVDs, a towel, and hair clippers. The defendant was arrested the following day and the suspected drugs were tested.

{¶ 28} Out of the incident, the defendant was indicted on June 23, 2008 on two counts of aggravated burglary. On September 10, 2008, the defendant was indicted on one count of felony drug possession. The two cases were handled together and resulted in a plea of no contest to possession of crack cocaine.

{¶ 29} On appeal, the defendant argued that the trial court erred in denying his motion to dismiss on speedy trial grounds. Specifically, the defendant argued that, because he remained incarcerated from the time of arrest until the time of the no contest plea, the triple-count provision of R.C. 2945.71 applied and the speedy trial time expired well prior to the date of the no contest plea. In rejecting the defendant's position, the court stated:

> In the instant case, we find that the charges of burglary, which arose out of the June 6, 2008 call to police and were based on eyewitness testimony, were separate and independent from the subsequently-filed drug possession charges that were brought after laboratory testing confirmed that the suitcase in appellant's car contained crack cocaine. Because the charges contained in the two indictments clearly do not share a "common litigation history," the triple-count provision in the speedy trial statute does not apply in this case pursuant to *State v. Parker*, supra.
>
> In addition, because the drug possession charges were based on additional facts that were revealed through further investigation, rather than on facts that were known by the state at the time of the initial indictment, *State v. Adams* is likewise inapplicable in this case. *State v. Adams*, supra. Instead, when the drug possession charges were brought, a new speedy trial time began to run. See *State v. Baker*, supra; see, also, *State v. Mohamed*, 10th Dist. No. 08AP-960, 2009 Ohio 6658.

*Id.* at ¶ 44-45.

{¶ 30} The effect of obtaining the results of drug laboratory testing and whether this constitutes an additional fact to warrant the triggering of a new speedy trial clock was before this court in *Mohamed*. In that case, the defendant was arrested on January 7, 2006 after allegedly beating a man and contemporaneously stealing a box containing suspected khat. The defendant was charged in municipal court for one count of aggravated robbery and one count of felonious assault. No charges were filed for any offense involving drug possession, and the suspected khat was sent for laboratory analysis. From the events of January 7, the defendant was indicted on January 17, 2006 for one count of aggravated robbery, two counts of robbery, and one count of felonious assault, but the defendant was not indicted on any drug-related offenses. On April 25, 2006, the defendant entered a plea of guilty to aggravated assault and the remaining charges were dismissed. The defendant was sentenced on July 20, 2006.

{¶ 31} Results of the laboratory analysis conducted on the suspected khat were submitted to the Franklin County Sheriff's Office on June 22, 2007. According to those results, the substance consisted of 40 bundles of shoots and leaves containing khat and weighing in excess of 3,188 grams. The defendant was subsequently indicted on

January 11, 2008 on one count of aggravated drug possession with a major drug offender specification.

{¶ 32} The defendant filed a motion to dismiss the 2008 indictment based upon alleged speedy trial violations. The defendant argued the indictment must be dismissed because the drug charge arose out of the same set of facts as the 2006 indictment. Because he had previously been incarcerated and entered a guilty plea with respect to the 2006 indictment, the defendant argued that his statutory speedy trial time had expired. To the contrary, the state argued the 2008 indictment arose out of facts distinct from those supporting the charges in the 2006 indictment and of which the state was unaware at the time of the 2006 indictment.

{¶ 33} After concluding (1) the defendant's rights had been violated based upon the "inordinate delay in providing the test results," and (2) the defendant's defense had been prejudiced by the defendant's previous guilty plea to a "related charge" with a nexus to the drug charge, the trial court granted the defendant's motion to dismiss. *Id.* at ¶ 13. On appeal, this court framed the defendant's argument as, "because the drug possession offense occurred on the same day as the aggravated robbery and felonious assault offenses, and because it involved a series of events (keeping in mind that the theft element involved in the aggravated robbery was the theft of a box containing suspected khat)," the arrest on the charges in the 2006 indictment started the running of the speedy trial clock as to the drug offense even though the defendant was not arrested or charged on the drug offense until 2008. *Id.* at ¶ 31.

{¶ 34} In reversing the trial court's judgment, we cited holdings from several Ohio appellate districts for the proposition that "laboratory results that were not known at the time of the original indictment constituted 'additional facts,' which warranted the triggering of a new speedy trial clock." *Id.* at ¶ 42. "The Second, Fourth, Ninth, Eleventh, and Twelfth District Courts of Appeals have all held that a subsequent indictment which was dependent upon a lab analysis that was not available to the state at the time of the original indictment starts the running of a new speedy trial clock." *Id.* Additionally, "we recognized that the length of time the state was in possession of the laboratory results was immaterial." *State v. Brown*, 10th Dist. No. 12AP-292, 2012-Ohio-5903, ¶ 11, citing *Mohamed* at ¶ 45. Finding that "the results of the lab analysis constituted a new fact that

was not available to the state at the time of the original arrest and/or indictment," the *Mohamed* court concluded that the defendant's "speedy trial clock was triggered anew" by the subsequent indictment. *Id.* at ¶ 52.

{¶ 35} Though recognizing this court's decision in *Mohamed*, appellant asserts it is distinguishable because this case concerns heroin, which is not an "exotic drug[] such as khat," as was at issue in *Mohamed*. (Appellant's Brief, 18.) We reject appellant's position that our decision in *Mohamed* was dependent upon the type of substance being tested, rather than the fact that the substance had undergone testing and the results of which were not available at the time of the initial indictment.

{¶ 36} This court followed *Mohamed* in *State v. Scott*, 10th Dist. No. 09AP-611, 2009-Ohio-6785, in which the defendant was charged with misdemeanor traffic offenses and a felony count of possession of cocaine. The cocaine count was dismissed for future indictment in June 2007, and, after a September 2007 laboratory report confirmed the substance was cocaine, a felony indictment was filed in March 2008. "Because the lab results were facts not known to the state at the time of defendant's traffic stop, the time period at issue is not included in the speedy trial calculations under R.C. 2945.71. Instead, the speedy trial clock began to run again on the date defendant was re-arrested on the felony indictment." *Id.* at ¶ 22.

{¶ 37} Likewise, in *Brown*, the defendant was arrested after a traffic stop revealed that he was in possession of a substance suspected to be crack cocaine. Though being charged with felony drug possession on June 22, 2010, the charges were dismissed for future indictment on July 2. After laboratory testing completed on November 11, 2010 confirmed the substance was cocaine, the defendant was indicted on May 31, 2011 with one count of felony drug possession. Relying on *Mohamed* and *Scott*, this court stated:

> Although the arresting officer suspected that the seized contraband was cocaine, the subsequent laboratory report confirming those suspicions was nevertheless an additional fact not known to the state at the time the original charges were filed. *See State v. Armstrong*, 9th Dist. No. 03CA0064-M, 2004-Ohio-726 (the state was not subject to the statutory speedy-trial timeframe applicable to the original charges where the subsequent indictment depended on confirmation from a lab report that the white powder seized was cocaine); *State v. Skinner*, 4th Dist. No. 06CA2931, 2007-Ohio-6320;

> *State v. Clark*, 11th Dist. No. 2001-P-0031, 2004-Ohio-334 (noting that even though the state may have suspected the confiscated substance was cocaine prior to its analysis, the speedy-trial time did not apply from the date of the first indictment because the lab analysis results were not received until after the first indictment). Moreover, while the second indictment was filed over six months before the subsequent indictment was filed, this period of delay is immaterial for speedy-trial purposes. *See State v. Dalton*, 2nd Dist. No. 2003 CA 96, 2004-Ohio-3575, ¶ 14; *Scott* at ¶ 43. Because the laboratory results were facts not known to the state at the time the original charges were filed, the time period between the dismissal of those charges and the subsequent indictment in the present case is excluded from the speedy-trial calculation.

*Brown* at ¶ 13.

{¶ 38} In the case before us, the charges in the September 2012 indictment arose out of facts distinct from those supporting the charges in the November 2012 indictment. While sharing in common the fact that the drugs were discovered on the same day as the shooting, the record reveals the search warrant executed for appellant's apartment was in response to the shooting. While searching the apartment, police discovered what appeared to be heroin in a container also storing ammunition of the same caliber used in the shooting. There is no evidence in the record linking the shooting to the heroin, nor was there any testimony about heroin at appellant's trial.

{¶ 39} Additionally, the record reflects the laboratory report confirming that the substance found in appellant's apartment was heroin was obtained in "late November prior to the filing of that second indictment." (Tr. 14.) This laboratory report confirming the presence of heroin constitutes an additional fact not known to the state at the time of the September 2012 indictment such that the state would not be subject to the speedy trial timetable of the initial indictment. *Brown*. Further, the two criminal cases at issue herein, one arising out of the September 2012 indictment and the other arising out of the November 2012 indictment, do not share a common litigation history.

{¶ 40} Given the above described authorities, including *Freeman* and *Mohamed*, we conclude the triple-count provision of R.C. 2945.71(E) is not applicable to those days following November 26, 2012, at which time appellant was served with the second indictment and no longer being held in jail "solely on the pending charge." *See State v.*

*Matland*, 7th Dist. No. 09MA-115, 2010-Ohio-6585 (upon introduction of a new domestic violence charge that was not from the same transaction that precipitated the initial charges, the defendant was no longer being held solely on the pending charge such that the triple-count provision of R.C. 2945.71 was inapplicable); *State v. Huffman*, 8th Dist. No. 92477, 2010-Ohio-5113 (days following arrest for probation violation while awaiting trial in separate case not calculated under triple-count provision of R.C. 2945.71).

{¶ 41} Because the triple-count provision of R.C. 2945.71 did not apply to the days following November 26, 2012, appellant's trial occurred well within the time required by R.C. 2945.71(C).   Accordingly, we find appellant's statutory speedy trial challenge to be without merit.

{¶ 42} Appellant also claims he was deprived of his constitutional right to a speedy trial.   In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the United States Supreme Court set forth four factors to consider when evaluating whether an appellant's right to a speedy trial was violated: (1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for the delay, (3) whether in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as a result of the delay.   These factors are balanced in a totality of the circumstances setting with no one factor controlling.   *Id.*   The Supreme Court of Ohio has also adopted this test to determine if an individual's constitutional speedy trial rights have been violated.   *State v. Selvage*, 80 Ohio St.3d 465, 467 (1997).

{¶ 43} The first of these factors, the length of the delay, "is to some extent a triggering mechanism.   Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."   *Barker* at 530; *Doggett v. United States*, 505 U.S. 647, 651 (1992).   Therefore, the *Barker* analysis is only triggered once a "presumptively prejudicial" delay is shown.   *State v. Miller*, 10th Dist No. 04AP-285, 2005-Ohio-518, ¶ 11, citing *Doggett* at 651-52.   Generally, delay is presumptively prejudicial as it approaches one year.   *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287, ¶ 20, citing *Miller* at ¶ 12.

{¶ 44} From the date of arrest, this case was pending for 141 days and, during that time, 43 days were tolled for discovery and a continuance jointly requested by the parties. We do not find the delay of 98 days in this case to be presumptively prejudicial.   This

court and other Ohio appellate districts have found delays longer than 98 days not to be presumptively prejudicial. *State v. Billups*, 10th Dist. No. 91AP-68 (Aug. 15, 1991) (delay of 148 days not presumptively prejudicial); *State v. Harrel*, 5th Dist. No. 98CAA06029 (Dec. 29, 1998) (delay of four to five months not presumptively prejudicial); *State v. Webb*, 4th Dist. No. 01CA32, 2002-Ohio-3552, ¶ 26 (delay of 186 days, not presumptively prejudicial); *State v. Pinson*, 4th Dist. No. 00CA2713 (Mar. 16, 2001) (delay of six and one-half months not presumptively prejudicial); *State v. Carter*, 9th Dist. No. 97CA006703 (Apr. 1, 1998) (delay of nine months not presumptively prejudicial).

{¶ 45} Because appellant has not made the threshold showing that there was a presumptively prejudicial delay in this case, we need not weigh the remaining *Barker* factors and conclude appellant's constitutional speedy trial rights were not violated.

{¶ 46} Finding no violation of appellant's statutory or constitutional speedy trial rights, we overrule appellant's first assignment of error.

### B.  Second Assignment of Error

{¶ 47} In his second assignment of error, appellant challenges both the sufficiency and weight of the evidence supporting his convictions. Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 48} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence);

*State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 49} In contrast to assessing the sufficiency of the evidence, when presented with a manifest weight challenge, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Id.*, quoting *Martin*.

{¶ 50} In conducting a manifest weight of the evidence review, we may consider the credibility of the witnesses.  *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6.  However, in conducting such review, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' "  *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 51} Under this assigned error, appellant asserts that, "[b]ecause Appellant was in his own home, and because he only has the burden of proving self-defense or defense of another by the preponderance of the evidence, Appellant respectfully requests that this court sustain his second assignment of error."  (Appellant's Brief, 37-38.)  The basis for this assertion is that in appellant's view, he was entitled to the presumption of self-defense found in R.C. 2901.05(B), sometimes referred to as the "Castle Doctrine."  *State v. Clellan*, 10th Dist. No. 09AP-1043, 2010-Ohio-3841, ¶ 20.

{¶ 52} Defendant's challenge to the sufficiency of the evidence insofar as it invokes self-defense and the Castle Doctrine is inappropriate.  " 'Under Ohio law, self-defense is an affirmative defense.' "  *State v. Calderon*, 10th Dist. No. 05AP-1151, 2007-Ohio-377,

¶ 30, quoting *State v. Williford*, 49 Ohio St.3d 247, 249 (1990), citing *State v. Martin*, 21 Ohio St.3d 91 (1986), *affirmed*, 480 U.S. 228 (1987), *rehearing denied*, 481 U.S. 1024. The "due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37, quoting *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir.1999).    Appellant's self-defense contentions are therefore addressed in our analysis of the manifest weight of the evidence.

{¶ 53} A defendant has the burden to prove self-defense by a preponderance of the evidence.  R.C. 2901.05(A); *State v. Smith*, 10th Dist. No. 04AP-189, 2004-Ohio-6608, ¶ 16.  To establish self-defense, a defendant must prove (1) he was not at fault in creating the situation giving rise to the affray, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape from such danger was the use of such force, and (3) he must not have violated any duty to retreat or avoid the danger.  *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.  A defendant may only use as much force as is reasonably necessary to repel the attack. *State v. Harrison*, 10th Dist. No. 06AP-827, 2007-Ohio-2872, ¶ 25, citing *State v. Jackson*, 22 Ohio St.3d 281 (1986), *cert. denied*, 480 U.S. 917 (1987).  The elements of self-defense are cumulative, so "[i]f the defendant fails to prove *any one* of these elements * * * he has failed to demonstrate that he acted in self-defense."  (Emphasis sic.)  *Jackson* at 284.

{¶ 54} Defendant argues the jury lost its way because the prosecution did not rebut the presumption of self-defense set forth in R.C. 2901.05(B).  Pursuant to the provisions of R.C. 2901.05(B), the court instructed the jury as follows:

> The defendant is presumed to have acted in self-defense or in defense of another when using defensive force that was likely to cause death or great bodily harm to Santos Guerrero if the defendant proved by the greater weight of the evidence that Santos Guerrero (a) was unlawfully and without the privilege to do so was in the process of entering the residence occupied by the defendant, or (b) unlawfully and without the privilege to do so had entered the residence occupied by the defendant.

(Tr. 501-02.)

{¶ 55} In support of his position that he is entitled to the presumption of self-defense of R.C. 2901.05, appellant relies upon the version of events he described to the jury. Appellant testified that when he arrived at home, he saw a man inside of the apartment and standing in front of his children. According to appellant, the man was looking as if he wanted to jump on and assault appellant. Fearing for his safety and that of his family, appellant testified he began shooting.

{¶ 56} In contrast, Guerrero testified the shooting did not occur inside of appellant's apartment but, rather, occurred outside the apartment as Guerrero was talking with Tulo. According to Guerrero, appellant appeared angry when he came outside and after Guerrero said, "what's up" and to "chill out," appellant began shooting. Further, Guerrero denied entering appellant's apartment that night, fighting with appellant, threatening appellant, or saying anything to appellant other than "what's up" and to "chill out."

{¶ 57} Faced with such conflicting evidence, the jury had the responsibility to determine witness credibility. As trier of fact, the jury was free to believe or disbelieve all or any of the testimony presented. *State v. Matthews*, 10th Dist. No. 11AP-532, 2012-Ohio-1154, ¶ 46, citing *State v. Jackson*, 10th Dist. No. 01AP-973, 2002-Ohio-1257. In this case, the jury could have rejected appellant's assertion that he had a bona fide belief that he was in imminent danger or the jury could have rejected appellant's assertion that Guerrero entered or was in the process of entering appellant's residence at the time of the shooting. A conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony. *State v. Anderson*, 10th Dist. No. 10AP-302, 2010-Ohio-5561, ¶ 19. Because the jury is in the best position to determine the credibility of each witness by taking into account inconsistencies, as well as witnesses' manner and demeanor, we cannot conclude this record presents a scenario where the jury clearly lost its way.

{¶ 58} Because the jury reasonably could have believed Guerrero's testimony over that provided by appellant, the jury's decision to reject appellant's claim that he was entitled to the presumption of self-defense contained in R.C. 2901.05(B) was not against the manifest weight of the evidence. Accordingly, we overrule appellant's second assignment of error.

## IV.  CONCLUSION

{¶ 59}  Having overruled appellant's two assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and McCORMAC, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____