{¶ 1} Defendant-appellant Jonathan Sims appeals from a judgment of conviction which found him guilty of failure to comply with an order or signal of a police officer (with a firearm specification), carrying a concealed weapon and having a weapon while under disability. He sets forth seven assignments of error that collectively challenge the sufficiency of the evidence, the admission of hearsay evidence, whether the police had cause to pursue him and the imposition of sentence. We find no error and affirm.
 {¶ 2} The state's evidence showed that the police received a late-night call reporting that a male, subsequently identified as Sims, had been in a bar and was carrying a gun. One of the officers who responded to the scene testified that she and her partner parked one block from the bar and saw a crowd of people standing outside the bar. A security officer for the bar told them that a shirtless male with a gun had run around the corner. The officers turned the corner and saw Sims enter a vehicle.
 {¶ 3} The officer took cover behind another car and "several times" ordered Sims to exit his vehicle. Sims ignored the order, started his car and pulled away. The officers returned to their zone car and pursued Sims. By this time, another zone car had joined the pursuit. Sims drove the wrong-way down two streets, exceeding the posted speed limit. After a chase of approximately 80 blocks, Sims' car struck a curb and veered into a utility pole. Sims exited the car and tried to flee on foot, but *Page 4 
tripped on the curb. Officers from the second zone car then arrested him. The testifying officer saw the other officers confiscate from the waistband of Sims' pants a revolver with black tape around the handle. Two live rounds were emptied from the gun and subsequent testing confirmed that the gun was operable.
 I {¶ 4} Sims' first assignment of error complains that the court denied him his right to cross-examine witnesses by allowing a detective to identify and testify to the contents of a police laboratory report which verified the operability of the firearm. Sims objected to the detective's testimony on grounds that it was hearsay unless the officer who prepared the report testified. The court overruled the objection, finding that the report and the conclusions listed therein fell under the Evid.R. 803(6) business record exception to the hearsay rule. Sims maintains that the admission of the report violated his right to confrontation and cross-examination.
 {¶ 5} The Sixth Amendment to the United States Constitution grants the accused the right "to be confronted with the witnesses against him * * *." The right to confrontation is implicated by hearsay. In Crawford v.Washington (2004), 541 U.S. 36, 53-54, the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Page 5 
 {¶ 6} The Ohio Supreme Court recently addressed this issue as it pertains to the admission of an autopsy report when the coroner who prepared the report did not testify at trial. In State v. Craig,110 Ohio St.3d 306, 2006-Ohio-4571, the supreme court noted thatCrawford distinguished between testimonial and nontestimonial statements and "indicated that business records are, `by their nature,' not testimonial." Id. at ¶81, quoting Crawford, 581 U.S. at 56. The supreme court stated:
 {¶ 7} "An autopsy report, prepared by a medical examiner and documenting objective findings, is the quintessential business record.Rollins v. State (2005), 161 Md.App. 34, 81, 866 A.2d 926. The essence of the business record hearsay exception contemplated inCrawford is that such records or statements are not testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are by their nature not prepared for litigation.People v. Durio (2005), 7 Misc.3d 729, 734, 794 N.Y.S.2d 863." (Internal quotation marks omitted.)
 {¶ 8} Evid.R. 803(6) creates a hearsay exception for records and reports "if kept in the course of a regularly conducted business activity" and if it was a "regular practice of the business activity to make" the record or report. The detective testified that reports generated from the test-firing of ballistic weapons were kept in the regular course of business by the Cleveland Police Department. This testimony established that the ballistic report prepared by the laboratory fell within the Evid.R. *Page 6 
803(6) business records exception to the hearsay rule. Like the autopsy report referenced in Craig, the ballistic test was nontestimonial because the conclusions stated in the report were fact, not opinion. Sims' constitutional right to confront witnesses was not violated.
 {¶ 9} Even if there had been some error in the admission of the ballistic report, the error would have been harmless beyond a reasonable doubt because the state offered independent evidence to verify the operability of the firearm. The detective who identified the contents of the laboratory report also testified that, during a break in his testimony, he went to the ballistics laboratory and personally witnessed a second test of the firearm's operability. The detective testified, "[w]ell, on this day, I personally took that weapon back down to SIU, and again, had it test fired by the scientific examiner * * *. And I personally witnessed this firearm to be operational." The state offered into evidence a spent bullet that the detective identified as having been fired from the firearm in the test that he witnessed.
 {¶ 10} This testimony constituted separate evidence of operability and would have rendered any perceived error in the admission of hearsay statements to be harmless beyond a reasonable doubt.
 II {¶ 11} Sims next argues that the court erred by admitting into evidence the gun seized from him after he had been apprehended. He maintains that the state failed *Page 7 
to establish a proper chain of evidence and that the gun produced at trial did not have a barrel and had black tape wrapped around the handle.
 {¶ 12} The predicate inquiry for the admission of any evidence is that it be authenticated or identified to show that "the matter in question is what its proponent claims." See Evid.R. 901. In practice, this requires the state to establish a "chain of custody" which shows that it had a process and method for tracking, maintaining control over, and providing accountability for all evidentiary items in the criminal investigation. The specific requirements necessary to show a chain of custody are not absolute. In State v. Gross, 97 Ohio St.3d 121,2002-Ohio-5524, T|57, the supreme court stated:
 {¶ 13} "As a general matter, `the state [is] not required to prove a perfect, unbroken chain of custody.' State v. Keene (1998),81 Ohio St.3d 646, 662, 693 N.E.2d 246. Accordingly, `[a] strict chain of custody is not always required in order for physical evidence to be admissible.' State v. Wilkins (1980), 64 Ohio St.2d 382, 389,18 O.O.3d 528, 415 N.E.2d 303."
 {¶ 14} "[T]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. State v.Blevins (1987), 36 Ohio App. 3d 147, 150. If a chain of custody is broke, that fact alone will not render evidence inadmissible — the broken chain goes to the weight afforded the evidence, not its admissibility." Id. See, also, State v. Barzacchini (1994), *Page 8 
96 Ohio App.3d 440, 457-458 ("even when a break in the chain of custody is uncovered, it goes to the credibility of the evidence and not to its admissibility").
 {¶ 15} The police officer who testified at trial said that she was present at Sims' apprehension, watched him being searched, and saw that Sims had "a revolver in his waistband with black tape around the handle." She said that she "marked, tagged and entered" the gun into the police property book. At trial, she identified the gun, noting that it had the same black tape on the handle that she saw when the gun was confiscated from Sims at the time of his arrest. This testimony effectively established a chain of custody.
 III {¶ 16} For his third assignment of error, Sims complains that he was erroneously convicted of a felony count of carrying a concealed weapon because the court failed to make a finding that the gun confiscated from him had been loaded.
 {¶ 17} Count 2 of the indictment charged Sims with carrying a concealed weapon under R.C. 2923.23(A)(2). That section states that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun other than a dangerous ordnance * * *." A violation of R.C. 2923.12(A) is normally a first degree misdemeanor; however, "if the weapon involved is a firearm that is * * * loaded," the offense becomes a fourth degree felony. See R.C.2923.12(G)(1). *Page 9 
 {¶ 18} When facts produced at trial can affect the degree of the offense, R.C. 2945.75(A)(2) requires that "[a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." In State v. Pelfry, 112 Ohio St.3d 422,2007-Ohio-256, the supreme court stated that R.C. 2945.75 is mandatory and that "a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense."
 {¶ 19} The state acknowledges Pelfry, but argues that it has no direct application here because Sims elected to be tried to the court and there are no "verdict forms" in a bench trial. It maintains that the court's judgment of conviction is the de facto "verdict form," and that the journal entry memorializing the conviction stated that the court found Sims guilty of "carrying concealed weapons 2923.12 — F4 as charged in count(s) 2 of the indictment." The state contends that this journal entry sufficiently complied with R.C. 2945.75.
 {¶ 20} We agree with the state that the court's journal entry memorializing its judgment of conviction is functionally equivalent to a "verdict form" as contemplated by Pelfry. Nothing in the Rules of Criminal Procedure requires a court sitting without a jury to complete a verdict form. Instead, the court issues a "judgment of *Page 10 
conviction" which must set forth "the plea, the verdict or findings, and the sentence." See Crim.R. 32(C). As noted by the state, the court's judgment of conviction clearly stated that it found Sims guilty of "carrying concealed weapons 2923.12 — F4 as charged in count(s) 2 of the indictment." This judgment entry was in full compliance with R.C.2945.75 because it was a guilty verdict that stated the degree of the offense for which Sims was found guilty. That degree of the offense could only apply if Sims had been in possession of a loaded weapon, so we find the court's journal entry adequate to state that Sims had been in possession of a loaded weapon.
 IV {¶ 21} Sims' fourth assignment of error complains that he was convicted of failure to comply based on police violations of theFourth Amendment because the police had no constitutional or statutory basis for pursuing him.
 {¶ 22} Sims did not file a motion to suppress or any other motion that called the court's attention to a perceived lack of probable cause to support his arrest, hence he waived the right to raise this argument for the first time on appeal. See State v. Moreland (1990),50 Ohio St.3d 58, 62; State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus. Even though an issue may be waived for purposes of appeal, we have the option of conducting a plain error analysis. See Crim.R. 52(B). Plain error "does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise."Moreland, *Page 11 50 Ohio St.3d at 62; see, also, State v. Long (1978), 53 Ohio St.2d 91, at paragraphs two and three of the syllabus.
 {¶ 23} We find no error, much less plain error, in Sims' arrest because the police had clear cause to arrest Sims. In State v.Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207, T|39, the supreme court stated:
 {¶ 24} "Probable cause for a warrantless arrest requires that the arresting officer, at the time of the arrest, possess sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed. Gerstein v.Pugh (1975), 420 U.S. 103, 111-112, 95 S.Ct. 854, 43 L.Ed.2d 54;Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. In determining whether probable cause existed, we examine the `totality' of facts and circumstances surrounding the arrest. See State v. Homan
(2000), 89 Ohio St.3d 421, 427, 2000 Ohio 212, 732 N.E.2d 952."
 {¶ 25} The totality of the facts support a finding that the police had probable cause to arrest Sims. The testifying police officer said that she and her partner responded to a radio broadcast concerning an armed male in a bar. R.C. 2923.121(A) states that "no person shall possess any firearm in any room in which liquor is dispensed" and for which a liquor permit has been issued. It makes no difference that the testifying officer did not actually see Sims' gun before ordering him to stop. The officer testified that the bar's security personnel on the scene corroborated the initial call relating to Sims' presence in the bar and his possession *Page 12 
of a firearm. Moreover, the officer said that there was a "large crowd" in front of the bar, "and everyone was yelling and screaming" and running for their cars because they were afraid. These facts independently corroborated the initial broadcast and gave the police probable cause to believe a crime had been committed.
 V {¶ 26} Sims next argues that his convictions on all three counts were unsupported by sufficient evidence.
 A {¶ 27} When reviewing a claim that there is insufficient evidence to support a conviction, we view the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 B {¶ 28} Count 1 of the indictment charged that Sims "operated a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop." This language tracked the language of R.C.2921.331(B). "A plain reading of [R.C. 2921.331(B)] shows that a signal from an officer need not be verbal; the blue lights and siren qualify as an applicable signal to stop." State v. Wooden (1993),86 Ohio App.3d 23, 26. *Page 13 
 {¶ 29} Viewing the evidence in a light most favorable to the state shows that Sims entered his car and drove away despite repeated orders to stop. Sims then continued driving, forcing the police to pursue him. The officer testified that her car's lights and sirens were activated for the entire pursuit. In addition, the evidence showed that Sims twice proceeded the wrong way down one-way streets and at other times far-exceeded the speed limit. A rational trier of fact could view these facts to show that Sims operated his vehicle to willfully elude the police after receiving a visible or audible signal to stop.
 C {¶ 30} Sims next argues that there was no evidence to show that he carried a loaded handgun or that he had concealed the gun.
 {¶ 31} The evidence could have led the court to conclude rationally that the gun was "loaded." A firearm is defined in R.C. 2923.11(B)(1) as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Although the word "loaded" is not defined by the Revised Code, it is commonly used to mean that ammunition, in the form of a projectile, had been placed in the gun so that it could be expelled by the action of an explosive or combustible propellant.
 {¶ 32} The evidence showed that upon apprehension, the police confiscated a gun from Sims and emptied "two rounds." The court could rationally conclude that *Page 14 
the recovery of live rounds from the gun was sufficient to prove that the gun was loaded.
 {¶ 33} We likewise find that the evidence showed that Sims' had concealed his weapon. In State v. Pettit (1969), 20 Ohio App.2d 170,173, the court stated the following test to use for determining whether a weapon is concealed:
 {¶ 34} "We think that a recognized test is that a weapon is concealed if it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed, who would come into contact with the possessor in the usual associations of life; but that absolute invisibility is not required, since ordinary observation does not extend to a search unusually careful, thorough or detailed, made because of suspicion that contraband which is not visible by ordinary observation may in actuality be present." (Citation omitted.)
 {¶ 35} The evidence showed that Sims had placed the gun in the waistband of his pants. The handle of the revolver had been covered in black tape. The court could have viewed these facts to show that Sims partially concealed the gun by placing it partway into his pants and used the tape to further conceal the appearance of the gun. Concealed in this manner, the gun's existence may not have been visible upon ordinary observation, and thus sufficiently concealed so as to constitute a violation of R.C. 2923.12.
 D *Page 15 {¶ 36} Finally, Sims argues that the state did not produce sufficient evidence to show that he had a weapon while under disability because there was no evidence that the gun was operable. We summarily reject this argument as the state offered proof of the ballistic test and the first-hand observations of a detective who witnessed the gun being test fired.
 VI {¶ 37} For his sixth assignment of error, Sims complains that he was subjected to unconstitutional, multiple punishments when he was separately sentenced under a firearm specification. He maintains that his convictions for failure to comply (with a firearm specification), carrying a concealed weapon, and having a weapon while under disability punished him for the same conduct — having a gun — and thus subjected him to multiple punishments for the same conduct.
 {¶ 38} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits an accused from being "tried twice for the same offense * * *." In the context of multiple convictions for the same conduct, R.C. 2941.25(A) states that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." The Committee Comment to R.C. 2941.25 states:
 {¶ 39} "The basic thrust of the section is to prevent `shotgun' convictions. For example, a thief theoretically is guilty not only of theft but of receiving stolen goods, *Page 16 
insofar as he receives, retains, or disposes of the property he steals. Under this section, he may be charged with both offenses but he may be convicted of only one, and the prosecution sooner or later must elect as to which offense it wishes to pursue."
 {¶ 40} To determine whether conduct constitutes two or more allied offenses of similar import, the courts employ a two-part test to determine when convictions may be obtained for two or more allied offenses of similar import. State v. Rance (1999), 85 Ohio St.3d 632,1999-Ohio-291. In the first step, the elements of the offenses at issue are compared in the abstract to determine whether the elements correspond to such a degree that the commission of one offense will result in the commission of the other. Id. at 638. However, if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both of them pursuant to R.C.2941.25(B). Id. at 638-639.
 {¶ 41} The offense of failure to comply with a lawful order of a police officer is not allied in any respect with carrying a concealed weapon or having a weapon under disability because the elements of these crimes do not correspond to such a degree that a failure to comply will result in the commission of the other offenses. A failure to comply may be committed regardless of whether the offender is armed with a weapon, so it is not an allied offense to carrying a concealed weapon or having a weapon under disability. *Page 17 
 {¶ 42} The offenses of carrying a concealed weapon and having a weapon under disability are likewise not allied offenses. In State v. Rice
(1982), 69 Ohio St.2d 422, the syllabus states, "[t]he crimes of carrying a concealed weapon, R.C. 2923.12, and having weapons while under disability, R.C. 2923.13, are not allied offenses of similar import under R.C. 2941.25(A), and may be committed separately and with a separate animus under R.C. 2941.25(B)." See, also, State v. Kole,92 Ohio St.3d 303, 2001-Ohio-191, fn.1.
 {¶ 43} The court did not err by sentencing Sims separately on separate counts of carrying a concealed weapon and having a weapon under disability.
 VII {¶ 44} For his seventh assignment of error, Sims maintains that the court erred by sentencing him to a firearm specification on the failure to comply count. He argues that the firearm specification had no relationship to the failure to comply charge and that it truly stemmed from either carrying a concealed weapon or having a weapon under disability, and that neither one of those charges could legally support a firearm specification.
 {¶ 45} We reject Sims' argument to the extent that he maintains that the firearm specification stemmed, in actuality, from either the concealed weapons charge or the weapon under disability charge. The indictment carried only one specification, and that specification pertained to the failure to obey charge listed in count 1. *Page 18 
 {¶ 46} The firearm specification arose under R.C. 2941.141, which states that a one-year mandatory prison term may be imposed upon the offender only if the indictment "specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." A firearm specification is not a separate offense, but a sentence enhancement. State v. Blankenship
(1995), 102 Ohio App.3d 534, 547.
 {¶ 47} The evidence showed that Sims had a firearm on his person as he committed the offense of failure to comply. He failed to stop just outside the bar when ordered to do so, and then evaded the police and caused them to pursue him despite their lights and sirens operating as a signal for him to stop. Upon being apprehended immediately after crashing his car into a utility police, the police found the gun in the waistband of Sims' pants. The court therefore rationally concluded that Sims had a firearm on his person at the time he committed the offense of failure to comply.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 19 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, P.J., and ANN DYKE, J., CONCUR. *Page 1