[Cite as *State v. Montgomery*, 2014-Ohio-4354.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                 :

      Plaintiff-Appellee,           :          No. 13AP-512
                                                        (C.P.C. No. 12CR-11-6125)
v.                                             :
                                                        (REGULAR CALENDAR)
Albert L. Montgomery,              :

      Defendant-Appellant.      :

---

D E C I S I O N

Rendered on September 30, 2014

---

*Ron O'Brien*, Prosecuting Attorney, *Michael P. Walton*, and *Kimberly M. Bond*, for appellee.

*Dennis C. Belli*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Albert L. Montgomery, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas following a bench trial in which the court found appellant guilty of trafficking in cocaine and illegal manufacture of drugs.

{¶ 2} On December 4, 2012, appellant was indicted on three counts of trafficking in cocaine, in violation of R.C. 2925.03, and one count of illegal manufacture of drugs, in violation of R.C. 2925.04. Counts 2 and 4 of the indictment each contained a school enhancement specification, i.e., that appellant committed the offense in the vicinity of a school as defined under R.C. 2925.01.

{¶ 3}   Appellant waived his right to a jury trial, and the case was tried to the court April 4, 2013.   The sole witness called by plaintiff-appellee, the State of Ohio, was Columbus Police Detective Nathaniel Smith, assigned to the department's Special Investigations Unit.  Detective Smith offered the following testimony at trial.

{¶ 4}   In December 2011, the detective was working with a confidential informant who introduced him to a drug supplier.  At that time, the confidential informant and Detective Smith only knew the supplier by his street name, "A-1."  (Tr. 22.)   On December 13, 2011, Detective Smith and the informant went to an apartment residence located at 2175 West Mound Street.  A-1, who the detective identified at trial as appellant, answered the door and invited them inside.  A-1 asked Detective Smith "how much I wanted," and Detective Smith responded that he wanted a "zip," which is "slang for a full ounce of cocaine."  (Tr. 15.)  A-1 "got on the phone, referred to somebody on the phone as Mikey, said: Bring me a zipper."  (Tr. 15.)

{¶ 5}   As Detective Smith waited, "at least three, four, five people came in and purchased a rock of what looked like a rock of crack cocaine from [A-1] while we were waiting on my order to arrive."  (Tr. 16.)  A-1 eventually told Detective Smith that "the order was here."  (Tr. 16.)  Detective Smith gave A-1 $1,400, and A-1 left the apartment; he returned approximately five minutes later with a bag of white powder.

{¶ 6}   A-1 then asked Detective Smith if he "wanted it cooked up."  (Tr. 16.) Detective Smith responded affirmatively, and asked how much it would cost.  A-1 told him "it will be another $80."  (Tr. 16.)  Detective Smith gave A-1 $80, and A-1 took the white powder into the kitchen.  Detective Smith observed A-1 "adding a little bit of baking soda to it, a little water, put it in the microwave for about 30 seconds or so."  (Tr. 16.)  A-1 then placed the mixture on the stove for approximately five minutes.  A-1 packaged the drugs and weighed the package on a scale.  According to the detective, it weighed "out to 30 grams on the scale."  (Tr. 17.)  Upon receiving the package, the detective exited the residence.

{¶ 7}   Following the transaction, Detective Smith obtained a photograph from a police database of an individual known to use the street name "A-1."  (Tr. 23.) The photograph depicted an individual named Albert Montgomery.  Detective Smith testified

that he "looked at the picture immediately after the deal and was 100 percent certain that was [appellant]." (Tr. 23.)

{¶ 8} Detective Smith testified he made a second purchase from appellant approximately one week later. On that date, the detective returned to the apartment at 2175 West Mound Street and knocked on the door. Appellant answered and asked Detective Smith: "Do you want the same thing as the last time?" (Tr. 27.) Detective Smith responded yes, and handed appellant $1,400. The detective waited approximately 45 minutes for the supplier to arrive. Appellant left the residence and returned five or ten minutes later with a bag of white powder. Detective Smith noticed that the bag "was light. It was definitely not an ounce." (Tr. 27.) Detective Smith "brought that to [appellant's] attention," and appellant "started to gently usher me, push me out of the door, and he said: We'll make it up next time if it's not * * * the right weight." (Tr. 28.) Appellant "made it clear it was time for me to leave." (Tr. 28.)

{¶ 9} At trial, Detective Smith identified appellant as the individual who sold him cocaine on two separate occasions. The detective estimated that the apartment at 2175 West Mound Street was located within 250 to 300 yards of two area schools. The detective testified that he also utilized data from the Franklin County Auditor's website to determine that both of the schools fell within a 1,000 foot radius of appellant's apartment. At trial, the parties stipulated that state's exhibit E consisted of 28.8 grams of crack cocaine, and that state's exhibit F contained 22.4 grams of crack cocaine.

{¶ 10} Following the presentation of evidence, the trial court found appellant guilty of all four counts, and merged Counts 3 and 4 for purposes of sentencing. By entry filed May 28, 2013, the court imposed a sentence of eight years incarceration each on Counts 1, 2 and 4, with Counts 1 and 2 to be served concurrent to each other, and consecutive to Count 4.

{¶ 11} On appeal, appellant sets forth the following five assignments of error for this court's review:

> [I.] The prosecutor's questions to the narcotics detective regarding the impact a false identification would have on his career constituted misconduct and deprived Defendant-Appellant of his due process right to a fundamentally fair trial under the Fourteenth Amendment to the U.S. Constitution.

[II.] The trial court erred in denying Defendant-Appellant's motion for a judgment of acquittal as to Counts 2 and 3 and the school enhancements under Counts 2 and 4 due to the State's failure to present sufficient evidence to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

[III.] Defendant-Appellant's convictions for all four counts of the indictment are against the manifest weight of the evidence.

[IV.] Defendant-Appellant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

[V.] Defendant-Appellant's aggregate sixteen-year prison sentence is clearly and convincingly contrary to law and/or the product of an abuse of discretion by the trial court.

{¶ 12} Under the first assignment of error, appellant contends the prosecutor engaged in misconduct by questioning Detective Smith during redirect examination regarding the impact a false identification could have on his law enforcement career. Appellant argues that the prosecutor's questions constituted improper vouching.

{¶ 13} By way of background, Detective Smith testified during direct examination that he had reviewed a photograph of an individual known by the street name of "A-1." (Tr. 23.) The photograph, obtained from a law enforcement database and admitted at trial as State's exhibit B, depicted an individual named Albert Montgomery; upon receiving the printout, the detective dated and initialed the photograph. Detective Smith testified that he "looked at the picture immediately after the deal and was 100 percent certain that was [appellant]." (Tr. 23.)

{¶ 14} On cross-examination, defense counsel asked Detective Smith whether he had printed "anything else off with a photograph"? (Tr. 51.) The detective acknowledged he had printed out a second photograph of an individual named Albert Montgomery, but that the photograph, admitted at trial as defendant's exhibit No. 1, did not depict the same individual as in the first photograph. Defense counsel showed the detective both photographs (i.e., state's exhibit B and defendant's exhibit No. 1), and asked the detective: "[D]o you think that those two people are, in fact, the same person"? (Tr. 52.) Detective Smith responded: "Those two people do not look the same to me." (Tr. 52.) Defense

counsel further questioned the detective about the fact that "the computer says both those people are, in fact, Albert Montgomery, correct"?  (Tr. 52.)  While noting that the names generated from the database were the same, Detective Smith stated: "I believe they're separated by several years.  I wasn't confident on that one which is why I signed this one. This one has the likeness of Mr. Montgomery."  (Tr. 52.)

{¶ 15} On redirect examination, the prosecutor engaged in the following colloquy with Detective Smith:

> Q. There are different ways to identify people?
>
> A. Correct.
>
> Q. But in this case the A-1 rang with Albert Montgomery?
>
> A. Yes, it worked.  It was the first thing I tried, and it was the same person.
>
> Q. If you had any doubt in your mind after the first identification from that sheet that you signed, what would you do?
>
> A. If I had any doubt, I wouldn't file any charges.
>
> * * *
>
> Q. If you failed to identify, if you had the picture the first time and you said that is not the guy and you bought again and you said that's still not the guy, what would you do?
>
> A. Try to find a different way to get that person identified.
>
> Q. Did this happen in this case?
>
> A. No.  I had him identified.
>
> Q. The second time you saw him, is that the same person you wrote on the sheet?
>
> A. Yes.
>
> Q. You're sure now?
>
> A. 100 percent.

Q. What would happen to your career if you made up an identification?

A. It would be worthless.

Q. Did you do that in this case?

A. No.

(Tr. 59-60.)

{¶ 16} Appellant contends the prosecutor's questions regarding the impact on the detective's career in the event he fabricated an identification were highly improper, and placed the trier of fact in the position of believing an acquittal would have collateral consequences beyond the issue of guilt or innocence. Appellant cites this court's decision in *State v. Brooks,* 176 Ohio App.3d 210, 2008-Ohio-1726 (10th Dist.), for the proposition that a prosecutor engages in misconduct when he or she attempts to leave the trier of fact with a belief that the jury must find the defendant guilty of an offense in order to avoid putting a law enforcement officer's career in jeopardy. In *Brooks,* this court observed that a prosecutor's argument that "deputy sheriffs were 'throwing their jobs away' in order to convict [the defendant] puts a jury in a posture of feeling they have to find a defendant guilty of something or cost * * * police officers their 'jobs * * *, their livelihoods.' " *Id.* at ¶ 20-21.

{¶ 17} In general, "[t]he test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Lott,* 51 Ohio St.3d 160, 165 (1990). With respect to the issue of vouching, it is "improper for an attorney to express a personal belief or opinion as to the credibility of a witness." *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 117.

{¶ 18} At the outset, we note that defense counsel did not object to the line of questioning in dispute. Under Ohio law, "[a] claim of prosecutorial misconduct is waived unless raised at trial, and if so waived, can serve as the basis for relief only if the conduct constitutes plain error." *State v. Franklin,* 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 24. An analysis of plain error "requires an inquiry into whether, but for the error, the outcome of the trial would have been different." *Id.*

{¶ 19} Upon review, we do not find the prosecutor improperly vouched for the credibility of the detective. Here, the disputed questions on redirect were in response to inquiries by defense counsel challenging the detective's testimony as to the certainty of his identification. As noted, Detective Smith acknowledged during cross-examination that he had printed out a second photograph of an individual named Albert Montgomery, but the detective explained that the two photographs did not depict the same individual. On redirect, the prosecutor sought to rehabilitate the detective's testimony regarding the photograph at issue and to show that the witness had no motive to lie about the identification.

{¶ 20} Even accepting, however, appellant's argument that the prosecutor's line of questioning was improper, we are unable to conclude, in the context of a bench trial, that the purported vouching affected the outcome of the case.[1] In general, the concern of improper vouching by a prosecutor is that such comments invade the province of the jury or amount to the prosecutor giving his or her personal opinion as to the character of a witness. *State v. Bailey,* 8th Dist. No. 97330, 2012-Ohio-3356, ¶ 58. In reviewing a bench trial, "an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict," and this presumption "may be overcome only by an affirmative showing to the contrary by the appellant." *State v. Wiles,* 59 Ohio St.3d 71, 86 (1991). *See also State v. Rowe,* 2d Dist. No. 25993, 2014-Ohio-3265, ¶ 45, citing *White v. White,* 2d Dist. No. 2013 CA 86, 2014-Ohio-1288, ¶ 11 ("Appellate courts presume that a trial court only considered relevant and admissible evidence in a bench trial."). In the instant case, the record does not suggest the trial court placed any undue emphasis on this portion of the detective's testimony. Based on the foregoing, appellant's first assignment of error is overruled.

{¶ 21} Appellant's second and third assignments of error raise challenges as to both the sufficiency and the weight of the evidence, and we will address these assignments of error collectively. Under the second assignment of error, appellant argues the trial court erred in denying his motion for judgment of acquittal as to Counts 2 (illegal manufacture of drugs) and 3 (first degree trafficking in cocaine when the amount exceeds

---

[1] We note that the *Brooks* case relied on by appellant was tried to a jury. While the *Brooks* court deemed the prosecutor's argument to be improper, it found no plain error occurred based on a determination that the argument did not contribute to the verdict.

27 grams but less than 100 grams), as well as to the school enhancement specifications under Counts 2 and 4.  Under the third assignment of error, appellant contends that his convictions on all four counts are against the manifest weight of the evidence.

{¶ 22} Crim.R. 29(A) states in part: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."  A motion for acquittal under Crim.R. 29 "challenges the legal sufficiency of the evidence." *State v. Carter,* 2d Dist. No. 21145, 2006-Ohio-2823, ¶ 40.  Further, such motion "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."  *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.  In reviewing the "record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *Id.,* quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 23} In contrast to a sufficiency argument, a reviewing court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact." *State v. Vasquez,* 10th Dist. No. 13AP-366, 2014-Ohio-224, ¶ 49.  Rather, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

{¶ 24} As noted, the trial court found appellant guilty of trafficking in drugs, in violation of R.C. 2925.03, and illegal manufacture of drugs, in violation of R.C. 2925.04. R.C. 2925.03(A)(1) sets forth the offense of trafficking in drugs, and states in part: "No person shall knowingly * * * [s]ell or offer to sell a controlled substance."  The elements of illegal manufacture of drugs are as follows: "No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.04(A). Pursuant to R.C. 2925.01(J), " '[m]anufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical

synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production."

{¶ 25} We first address arguments presented by appellant with respect to his conviction for illegal manufacture of drugs. Appellant contends the trial court, at the urging of the prosecutor, improperly took judicial notice that the activity at issue constituted manufacturing under the Ohio Revised Code. Appellant further argues the state failed to offer proof that the manufacture of crack cocaine took place. According to appellant, while Detective Smith described the suspect's conduct in cooking the substance in a microwave oven, the detective never offered any explanation as to the cooking process itself, or whether this activity altered the chemical makeup of the substance.

{¶ 26} The state argues that appellant incorrectly asserts the trial court, at the request of the prosecutor, took judicial notice that appellant engaged in the illegal manufacture of cocaine; rather, the state maintains, the prosecutor only noted that the trial court could take judicial notice of the definition of "manufacture" under R.C. 2925.01(J). A review of the record supports the state's argument on this issue. Specifically, during closing argument, the prosecutor's remark to the court regarding this issue was as follows: "The definition of manufacture is in [R.C.] 2925.01, which the Court can take judicial notice of." (Tr. 72.) We therefore find no merit to appellant's contention that the court took improper judicial notice of evidence relating to the offense at issue.

{¶ 27} As noted, appellant asserts the prosecution failed to offer proof as to the elements of the offense of manufacture of cocaine. In response, the state argues it was not required to show that the cooking process altered the chemical makeup of the cocaine; instead, the state contends, evidence that appellant processed and repackaged the cocaine was sufficient to sustain a conviction for illegal manufacture of drugs.

{¶ 28} At trial, the prosecution presented evidence that appellant obtained a white powder substance from a supplier and offered to cook the substance for the purchaser; appellant mixed the white powder with other substances, including baking soda, cooked the mixture in a microwave and stove, and repackaged and weighed the resultant compound on a scale once it had cooled. In addressing the state's evidence as to the subject offense, the trial court noted "uncontroverted testimony * * * that the cocaine shows up at the residence in a powder form, the Defendant offers to process it, and he

cooks it in a microwave, he cooks it on the stove, he adds color to it, that all fits the definition of manufacture."  (Tr. 78.)

{¶ 29} Here, construing the evidence most strongly in favor of the state, testimony by the detective indicating that appellant "cooked" or processed the cocaine with various substances, including baking soda, and then repackaged the compound, constituted sufficient evidence for the trier of fact to conclude that appellant engaged in the illegal manufacture of cocaine.  *See, e.g., State v. Spradlin,* 187 Ohio App.3d 767, 2010-Ohio-2140, ¶ 41 (2d Dist.) (evidence recovered from kitchen, including digital scales containing cocaine, aluminum pan containing cocaine residue, a microwave containing "crack all over the inside" of it, and the presence of baking soda, "one of the key ingredients in making crack cocaine," sufficient to support a finding that defendants engaged in illegal manufacture of drugs); *State v. Brewer,* 2d Dist. No. 22935, 2009-Ohio-6129 (state presented sufficient evidence for reasonable juror to conclude that defendant manufactured crack based on officer's testimony that defendant was cooking crack, and that officer had recovered a blow torch, a pie tin containing crack, and a small baggie containing baking soda from defendant's truck); *State v. Forney,* 9th Dist. No. 24361, 2009-Ohio-2999 (conviction for illegal manufacture of drugs supported by evidence that police officers recovered measuring cup with cocaine residue, baking soda, a digital scale, small plastic bags, and heat source in kitchen).

{¶ 30} Appellant also challenges the sufficiency of the evidence with respect to the school enhancement specifications, arguing that the state relied on lay opinion testimony of the detective and a diagram from the Franklin County Auditor's website as sole proof that the two cocaine sales occurred within 1,000 feet of a school.  Appellant cites a federal decision, *United States v. McCall,* 553 F.3d 821 (5th Cir.2008), as support for the proposition that a "guess" by a narcotics agent is insufficient to satisfy the government's requirement to prove a criminal defendant distributed drugs within 1,000 feet of a school.

{¶ 31} At issue is the sufficiency of the state's evidence that appellant committed the offenses charged under Counts 2 and 4 in the vicinity of a school.   Ohio courts have noted that "[t]he purpose of the school enhancement specification is 'intended to punish more severely those who engage in the sale of illegal drugs in the vicinity of our schools and our children.' "  *State v. Throckmorton,* 4th Dist. No. 08CA17, 2009-Ohio-5344, ¶ 19,

*rev'd in part on other grounds*, 126 Ohio St.3d 55, 2010-Ohio-2693, quoting *State v. Manley,* 71 Ohio St.3d 342, 346 (1994). Pursuant to R.C. 2925.01(P), "[a]n offense is 'committed in the vicinity of a school' if the offender commits the offense * * * within one thousand feet of the boundaries of any school premises." In order to convict a defendant under a school specification, the state "must prove beyond a reasonable doubt the drug transaction occurred within the specified distance from the school." *State v. Goins,* 5th Dist. No. CA99-08 (Sept. 29, 2000).

{¶ 32} At trial, Detective Smith testified he had estimated the apartment on West Mound Street where he purchased the cocaine was "approximately 250, 300 yards" from Hilltonia Middle School, and that a second school, West Mound Elementary School, appeared to be that same distance from the apartment. (Tr. 35.) According to the detective, "[i]n addition to estimating" the distances at issue, he also utilized records from the county auditor's website. (Tr. 37.) Specifically, the detective noted that, upon entering "a parcel address down to the actual building on a map it will give you a 1,000 foot radius of all of the businesses and residences that are inside that radius of a thousand feet." (Tr. 37.) Detective Smith selected a distance of 1,000 feet, and the website "mapped a radius around the parcel, 2175 West Mound Street, Mr. Montgomery's apartment where [the detective] purchased the cocaine." (Tr. 38.) The detective testified that "both of the schools fell within the thousand-foot radius." (Tr. 38.)

{¶ 33} Appellant challenges the fact that the detective "estimated" the offenses occurred within 1,000 feet of a school. Ohio courts, however, have found sufficient evidence to support a conviction on a school enhancement where the state presented testimony regarding the approximate distance between the drug transaction and the school as well as photographs depicting the school in relation to the property. *Throckmorton* at ¶ 38 (officer's "estimate" that school sits within 300 feet of residence, as well as photograph that depicted school in relation to property, "supports a reasonable inference that the distance between the property and the school was less than one thousand feet"). *See also State v. Brown,* 9th Dist. No. 23637, 2008-Ohio-2670, ¶ 18 (while direct evidence by actual measurement would have been more impressive evidence, the state's introduction of photographs and a satellite image, including the

house and school, "adequately supports a conclusion that less than 1,000 feet separated the two buildings").

{¶ 34} Courts have also found testimony by a witness as to an approximate distance, even absent photographic evidence, sufficient to prove a drug offense occurred within the vicinity of a school. *See State v. Speers,* 11th Dist. No. 2003-A-0112, 2005-Ohio-4654, ¶ 28-29 (testimony by detectives that controlled buys occurred approximately 400 feet from elementary school "standing alone, adequately established sufficient evidence that the 'controlled buys' occurred 'within the vicinity' of a school"). *See also State v. Howard,* 12th Dist. No. CA2012-04-034, 2013-Ohio-1489, ¶ 65-66 (testimony by detective that offices where drug transactions occurred were within 200 feet of a kindergarten daycare center sufficient to support school enhancement specification).

{¶ 35} By contrast, Ohio courts have found insufficient evidence to prove a charge that an offense was committed within 1,000 feet of a school premises where the state relies on a map not drawn to scale. *See Goins* (evidence insufficient where sheriff admitted that distance between appellant's residence and the spot police officer stood was never measured, and where sheriff admitted on cross-examination that diagram prepared by officers was not drawn to scale).

{¶ 36} As cited above, appellant relies upon a federal court decision to challenge the officer's estimate of the distance. In *McCall,* the court found the government's evidence insufficient to support a finding that the place where the defendant distributed drugs was within 1,000 feet of a school. Under the facts of that case, the government "offered only: (1) an aerial photograph without scale * * *; and (2) testimony from [a detective] that he had driven the streets shown in the photograph a number of times and that the school and house were, in his opinion, within 1000 feet of each other." *Id.* at 825. With respect to the aerial photograph, the court noted that "[t]he jurors were * * * left with nothing but an aerial photograph *without any indication of scale whatsoever.*" (Emphasis sic.) *Id.* at 832-33. The court further noted that, without a "circle or some indication of scale and distance on it, the aerial photograph is useless." *Id.* at 833. In its decision, the court offered that one of the "myriad ways" the government could have sought to prove the distance between the defendant's house and the school would be to tender "a map with scale." *Id.* at 834.

{¶ 37} In contrast to the facts of *McCall,* the prosecution in the instant case submitted a scaled aerial satellite photograph. The photograph depicts the location of the apartment on West Mound Street and identifies Hilltonia Middle School and West Mound Elementary School. In considering the evidence regarding the enhancement, the trial court cited the detective's testimony regarding his use of the auditor's website "which indicated it was within a thousand feet." (Tr. 79.) The court specifically noted that "Exhibit A has a scale on it," and the court determined, based on the evidence presented, that the Hilltonia Middle School "is certainly well within a thousand feet." (Tr. 79.) While the court noted that the distance regarding the West Mound Elementary School was "a closer call," the court found that the evidence also supported a determination that the offense at issue was committed within 1,000 feet of this school. (Tr. 79.) Here, based on the testimony of the detective and the admission of the state's exhibit of an aerial photograph, depicting the location of the apartment and surrounding area, and containing a bar scale, we conclude that the state presented sufficient evidence to prove the school enhancement specifications.

{¶ 38} Appellant also challenges the enhanced level of the trafficking offense under Count 3. Specifically, appellant argues that, while Count 3 of the indictment alleged the weight of the cocaine equaled or exceeded 27 grams, the stipulated laboratory report indicated the substance consisted of 22.4 grams of cocaine.[2] Appellant contends that the trial court noted the stipulation of 22.4 grams, but found appellant guilty of Count 3 based on the fact the offer to sell was for one ounce (28.34 grams).

{¶ 39} As noted by the state, however, the trial court merged Counts 3 and 4, and the state elected to sentence on Count 4. Under Ohio law, "[w]hen a trial court dispatches with a count through merger, any error in the jury's verdict on the merged count is rendered harmless beyond a reasonable doubt." *State v. Wolff,* 7th Dist. No. 07 MA 166, 2009-Ohio-2897, ¶ 70, citing *State v. Powell,* 49 Ohio St.3d 255, 263 (1990) (superseded by constitutional amendment on other grounds). *See also State v. Hubbard,* 8th Dist. No. 97118, 2012-Ohio-1052, ¶ 29 (court's finding that appellant's rape conviction was

---

[2] In general, trafficking in cocaine is a felony of the fifth degree. R.C. 2925.03(C)(4)(a). However, pursuant to R.C. 2925.03(C)(4)(f), if the drug involved is cocaine, and the amount of the drug "equals or exceeds twenty-seven grams but is less than one hundred grams," the trafficking offense is a felony of the first degree.

supported by sufficient evidence "disposes of appellant's arguments" that insufficient evidence existed to convict him of kidnapping charge which court merged with rape conviction prior to sentencing). Thus, based upon the merger, we need not address the sufficiency of the evidence as to Count 3. *State v. Washington,* 10th Dist. No. 09AP-424, 2009-Ohio-6665, ¶ 18.

{¶ 40} We next address appellant's arguments challenging his convictions as against the manifest weight of the evidence. Appellant initially contends that the detective utilized a highly suggestive procedure to identify the individual he knew only as "A-1." Appellant points to the fact that another law enforcement officer, who did not testify at trial, provided appellant's name to Detective Smith. In support, appellant relies upon the provisions of R.C. 2933.83, which sets forth procedures for photo lineup identifications.[3]

{¶ 41} The state argues that the provisions of R.C. 2933.83 are inapplicable because no photo lineup identification was involved in this case. Upon review, we agree. Further, as noted under the facts, the detective made an in-court identification based on his observations on two separate occasions when he purchased drugs at the apartment located at 2175 West Mound Street.

{¶ 42} Appellant also challenges the fact that the prosecution did not call the confidential informant as a witness at trial. According to appellant, the failure of the state to produce the confidential informant raises the inference that the informant's testimony would have been unfavorable to the prosecution.

{¶ 43} Under Ohio law, a missing witness instruction is appropriate if the following requirements are met: "(1) the witness in question must be within the particular power of a party to produce, and (2) the testimony of that witness would elucidate the transaction." *State v. Husband,* 10th Dist. No. 08AP-917, 2009-Ohio-2900, ¶ 11, citing *State v. Melhado,* 10th Dist. No. 02AP-458, 2003-Ohio-4763, ¶ 51. Further, "[i]f the testimony of the missing witnesses would have been merely cumulative, then the witness would not

---

[3] Effective July 6, 2010, "R.C. 2933.83(B) requires any law enforcement agency or criminal justice entity that conducts live lineups and photo lineups to adopt specific procedures for conducting the lineups." *State v. Ruff,* 1st Dist. No. C-110250, 2012-Ohio-1910, ¶ 5. The purpose of the statute is to prevent the use of "unnecessarily suggestive procedures." *State v. Howard,* 8th Dist. No. 100094, 2014-Ohio-2176, ¶ 18.

naturally be produced by the state, and the requested instruction would not be appropriate." *Id.*

{¶ 44} In the instant case, the record does not indicate that it was within the power of the state to produce the confidential informant at trial. Moreover, there is no indication that the testimony of this witness would have elucidated the transaction or that such testimony would not have been merely cumulative to the testimony of the detective. *Id.* at ¶ 51.

{¶ 45} Upon review, the record supports the trial court's determination that the state presented sufficient, competent, credible evidence to support the convictions for trafficking in drugs and illegal manufacture of drugs. We further conclude that the trier of fact did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of the offenses; thus, the convictions are not against the manifest weight of the evidence. Based on the foregoing, appellant's second and third assignments of error are overruled.

{¶ 46} Under the fourth assignment of error, appellant argues that he received ineffective assistance of counsel. Appellant contends his trial counsel's performance was deficient for: (1) conceding the absence of reasonable doubt, (2) failing to litigate a motion to suppress identification testimony, and (3) failing to object to hearsay testimony by Detective Smith.

{¶ 47} Under Ohio law, in order to prevail on a claim of ineffective assistance of counsel, a defendant is required to "show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Smith,* 89 Ohio St.3d 323, 327 (2000), citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In order to establish prejudice, a defendant is required to prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶ 48} Appellant maintains his trial counsel was deficient by conceding the absence of reasonable doubt, and further argues there were legitimate arguments available to counsel for challenging the reliability of the state's evidence on the issue of identity. Appellant suggests other grounds for questioning the identification in this case

including: (1) the presence of the photograph depicting a different individual named Albert Montgomery, (2) the prosecution's failure to produce the confidential informant, and (3) the absence of corroborating physical evidence.

{¶ 49} The record indicates, however, that trial counsel questioned the detective as to those issues. We have previously noted defense counsel's cross-examination of Detective Smith with respect to the second photograph, admitted as defendant's exhibit No. 1, which the detective testified depicted someone other than appellant. Counsel also questioned the detective about "a confidential informant you chose not to produce." (Tr. 57.) Finally, the record indicates trial counsel inquired as to why the detective chose not to "go right back in, get the money and make the arrest" following the purchase at the apartment. (Tr. 63.) Upon review, appellant has not shown deficient performance by counsel with respect to those matters.

{¶ 50} Appellant also points to defense counsel's comments to the trial court that his client wanted him to raise certain "concerns," but that counsel "tried to explain to Mr. Montgomery that those things are not necessarily required." (Tr. 73.) According to appellant, counsel's comments conveyed a belief that his client's reasonable doubt arguments were not legitimate, and that the decision to go to trial was an exercise to appease the client. In support, appellant relies upon a federal court decision, *United States v. Swanson,* 943 F.2d 1070, 1074 (9th Cir.1991), in which that court held defense counsel's concession in his argument to the jury that there was "no reasonable doubt that his client robbed the bank" tainted the integrity of the trial.

{¶ 51} A review of the transcript in the instant case does not suggest such a concession by defense counsel. Rather, comments by defense counsel that he attempted to explain to appellant "those things are not necessarily required" were made in the context of counsel noting "other things that may have been able to be produced that would substantiate, bolster, aid, help the Court." (Tr. 73.) More specifically, defense counsel observed that the state had not produced the confidential informant, and that law enforcement officers chose not to record the events despite the fact that "a wire was worn both times." (Tr. 73-74.) Thus, in contrast to the facts of *Swanson,* we do not find that the subject comments in this case constituted a concession as to guilt.

{¶ 52} Appellant also notes that his initial counsel filed a motion to suppress the identification testimony, but that successor counsel did not request a hearing on the motion. As a result, appellant argues, the admissibility of Detective Smith's "tainted" identification of Montgomery was never litigated. Again, as in a prior assignment of error, appellant relies upon the provisions of R.C. 2933.83(C) to challenge the identification. We have previously addressed and rejected, however, appellant's argument regarding the applicability of that statutory provision to the facts of this case, and we find no merit to appellant's contention that trial counsel was ineffective in failing to pursue a motion to suppress under such a theory.

{¶ 53} Appellant further contends that counsel was deficient in failing to object to inadmissible hearsay evidence. According to appellant, defense counsel had a duty to object to Detective Smith's testimony that another law enforcement officer told him that an individual named Montgomery was a drug dealer using the street name of A-1. Appellant maintains, based upon *State v. Ricks,* 136 Ohio St.3d 356, 2013-Ohio-3712, that such testimony constituted inadmissible hearsay. In *Ricks,* the Supreme Court of Ohio held that, "in order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged." *Id.* at ¶ 27.

{¶ 54} The court in *Ricks* recognized that, even in instances in which a court has committed constitutional error, "such error can be harmless." *Id.* at ¶ 46. In the instant case, any purported error in the admission of this testimony was "harmless in light of the other identification testimony" presented. *State v. Robinson,* 8th Dist. No. 100126, 2014-Ohio-1624, ¶ 14. As previously noted, the detective testified as to his purchase of drugs from appellant on two separate occasions at the apartment.

{¶ 55} Finally, appellant asserts his counsel was ineffective in failing to object to the prosecutor's questioning of the detective as to whether he would suffer adverse consequences to his career if he falsified an identification. However, in light of our disposition of the first assignment of error, finding that the prosecutor did not improperly

vouch for the credibility of the detective, appellant has not demonstrated deficient performance by counsel. Appellant's fourth assignment of error is overruled.

{¶ 56} Under the fifth assignment of error, appellant challenges various aspects of his sentence. Specifically, appellant argues: (1) the trial court failed to comply with R.C. 2945.75, (2) the court erred in failing to merge Counts 1 and 2, (3) the court erred in failing to make requisite findings for consecutive sentences under R.C. 2929.14(C)(4), and (4) the court's imposition of an aggregate sentence of 16 years is contrary to law.

{¶ 57} Appellant first contends the trial court's written findings of guilt do not specify the degree of the offenses for which he was convicted, nor do they specify the additional statutory elements needed to elevate each offense to a first-degree felony. According to appellant, the verdict form returned by the trial court supports the lowest form of the offense. In support, appellant relies on R.C. 2945.75, as well as *State v. Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256. R.C. 2945.75(A) states as follows:

> When the presence of one or more additional elements makes an offense one of more serious degree:
>
> (1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶ 58} In *Pelfrey,* at syllabus, the Supreme Court of Ohio held: "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense."

{¶ 59} The state, noting that the matter was not tried to a jury, argues that the trial court was not required to make specific findings. The state further argues the trial court's entry form finding appellant guilty, as well the court's sentencing entry, both set forth the

level of each offense and, therefore, the requirements of R.C. 2945.75 were satisfied.  We agree.

{¶ 60} Ohio courts have held that, in a case in which a defendant waives a jury trial and tries his case to the court, a trial court's "journal entry memorializing its judgment of conviction is functionally equivalent to a 'verdict form' as contemplated by *Pelfrey*," and "[n]othing in the Rules of Criminal Procedure requires a court sitting without a jury to complete a verdict form."  *State v. Sims,* 8th Dist. No. 89261, 2007-Ohio-6821, ¶ 20. Rather, "the court issues a 'judgment of conviction' which must set forth 'the plea, the verdict or findings, and the sentence.' "  *Id.,* citing Crim.R. 32(C).  Thus, a trial court's judgment of conviction stating that it found the defendant "guilty of 'carrying concealed weapons [R.C.] 2923.12 – F4 as charged in count(s) 2 of the indictment * * * was in full compliance with R.C. 2945.75 because it was a guilty verdict that stated the degree of the offense for which [the defendant] was found guilty." *Id.*

{¶ 61} Here, the entry form signed by the trial judge (on April 5, 2013) indicates the court found appellant "[g]uilty as he stands charged in the Indictment," and it lists each offense as "F1."  Further, the court's judgment entry, filed May 28, 2013, indicates that the court returned a verdict finding appellant guilty of two counts of trafficking in cocaine, "Felonies of the First Degree," and one count of illegal manufacture of drugs, "a Felony of the First Degree."

{¶ 62} Appellant next argues the trial court erred in failing to merge Counts 1 and 2 under R.C. 2941.25.  Appellant contends the factual scenario in the instant case satisfies both prongs of the test in *State v.  Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314 for determining whether offenses are allied offenses of similar import under R.C. 2941.25.

{¶ 63} In *State v. Cummings,* 8th Dist. No. 100657, 2014-Ohio-3717, ¶ 28, the court discussed the holding in *Johnson* as follows:

> In [*Johnson*], the Ohio Supreme Court clarified the test used to determine whether offenses are allied offenses of similar import under R.C. 2941.25.  Under this test, courts must first determine "whether it is possible to commit one offense and commit the other with the same conduct." *Johnson* at ¶ 48. If it is possible to commit both offenses with the same conduct, courts must next determine whether the offenses were, in fact, committed by the same conduct. If the offenses are committed

either separately or with a separate animus, the offenses will
not merge. *Id.* at ¶ 51.

{¶ 64} We note that appellant has cited no Ohio authority for the proposition that the offenses at issue are allied offenses. Even assuming, however, that the offenses could be committed with the same conduct, we agree with the state that the facts of the instant case indicate appellant committed two separate acts. Specifically, the first act occurred when appellant knowingly sold cocaine in an amount equal to or exceeding 27 grams to the undercover officer, the transaction being complete when the detective received the cocaine in exchange for $1,400. The second act occurred when appellant asked the purchaser if he wanted the drugs "cooked." The detective responded affirmatively, and gave appellant an additional amount of money ($80); appellant then went to the kitchen where he "cooked" the cocaine and repackaged it. Because the record indicates two separate acts, the trial court did not commit plain error in failing to merge Counts 1 and 2.

{¶ 65} Appellant further argues that the trial court erred by failing to make requisite findings under R.C. 2929.14 prior to imposing consecutive sentences. We agree.

{¶ 66} In *State v. Jones,* 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 16, this court held: "It is established in this district that 'when the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on multiple offenses, "appellant's sentence is contrary to law and constitutes plain error." ' " *Id.*, quoting *State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 15, quoting *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 18.

{¶ 67} The state concedes that the trial court did not comply with the requirements of R.C. 2929.14(C)(4), but requests that we find no plain error from the trial court's failure to make the necessary statutory findings. This court, however, has previously addressed and rejected such arguments. *See Jones* at ¶ 17; *State v. Hunter,* 10th Dist. No. 13AP-196, 2013-Ohio-4013, ¶ 9. Thus, we conclude that this matter must be remanded to the trial court for resentencing to make the requisite findings under R.C. 2929.14(C)(4). *See State v. Hubbard,* 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 87 ("Because the trial court failed to comply with R.C. 2929.14(C)(4), by failing to make any of the required findings on the record before imposing consecutive sentences, we must vacate defendant's sentence and remand the case for resentencing."). In light of our finding that the trial

court failed to comply with R.C. 2929.14(C)(4), requiring a remand for resentencing, appellant's remaining argument challenging his aggregate 16-year sentence is moot. Accordingly, appellant's fifth assignment of error is overruled in part and sustained in part.

{¶ 68} Based on the foregoing, appellant's first, second, third, and fourth assignments of error are overruled, the fifth assignment of error is overruled in part and sustained in part, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for resentencing.

*Judgment affirmed in part, reversed in part;*
*cause remanded with instructions.*

TYACK and KLATT, JJ., concur.

_____